482 A.2d 1113

**Paul R. ROSEN, Appellant,**

v.

**RITTENHOUSE TOWERS, Hotel Rittenhouse Associates, J.L. Wolgin Associates, Inc., Jack L. Wolgin.**

Superior Court of Pennsylvania.

Argued May 10, 1984.

Filed Oct. 12, 1984.

Russell D. Henkin, Philadelphia, for appellant.

Mark R. Rosen, Philadelphia, for appellees.

Before WICKERSHAM, WIEAND and HOFFMAN, JJ.

WICKERSHAM, Judge:

In this case, Paul R. Rosen appeals from the order of the Court of Common Pleas of Philadelphia County granting a petition to strike a lis pendens filed by Rittenhouse Towers, et. al. The suit arose out of appellant's attempt to purchase a penthouse condominium unit in Rittenhouse Towers from appellees.

Appellee Hotel Rittenhouse Associates (hereinafter referred to as "HRA") is the owner of Rittenhouse Towers, a condominium/hotel which, at time of suit, was under construction in Rittenhouse Square, Philadelphia. On October 17, 1980, appellant Rosen issued a $5,000.00 check to appellee HRA[1] as an initial deposit on a penthouse condominium unit. In consideration for this deposit, Rosen received a Condominium Apartment Reservation, pursuant to which HRA agreed to reserve unit 33I for him. This reservation provided that the condominium would be reserved until the "Expiration Time," which was defined as the later of January 15, 1980, or fifteen (15) days following delivery to Rosen of HRA's Public Offering Statement and a proposed Agreement of Sale. In no event, however, was the reservation to extend beyond January 30, 1981 unless agreed to in writing by the parties.

In a letter dated January 30, 1981, Rosen informed HRA that he had not yet received the proposed Agreement of Sale and that he did not want his reservation to expire as a result of HRA's "failure to forward to [Rosen] the agree-

1. At that time, appellee HRA was trading as Rittenhouse Apartment Associates.

ment and to enter into negotiations for an Agreement of Sale." This letter also made reference to certain "understandings" which Rosen claimed had been reached between HRA and himself with regard to the incorporation of special provisions in the Agreement of Sale. Rosen stated that these "understandings" included the following:

1. The down payment would be provided by a Letter of Credit;

2. Secondary financing with respect to a portion of the purchase price would be made available by Mr. Wolgin;

3. Provisions relating to the obligation to close under the Agreement of Sale to be within 120 days of the occupancy being available on my floor and with respect to full service of the building being available in connection with such occupancy; and,

4. Mortgage contingency clause with respect to the financing of the purchase price which must be paid at settlement and the balance of the purchase price which must be paid at settlement (not including the amount of the purchase price deferred as a result of the secondary financing described above).

R.R. at 29a–30a.

On February 18, 1981, Laurada Byers, sales director for Rittenhouse Towers, sent a letter to Rosen confirming that the terms of Rosen's condominium reservation dated October 17, 1980 remained in effect. This letter did not mention the "understandings" referred to by Rosen in his letter of January 30, 1981.

The Condominium Public Offering Statement and the proposed Agreement of Sale were forwarded to Rosen on August 27, 1981; the proposed Agreement of Sale did not include Rosen's "understandings." In a letter dated October 16, 1981, counsel for HRA reaffirmed an earlier rejection by Byers that the four items listed by Rosen were unacceptable and stated that no agreement to incorporate these items had ever been reached. The letter also advised Rosen:

all purchasers are now being asked to submit final executed Agreements of Sale in a form acceptable to HRA no later tha[n] October 23, 1981. If an executed Agreement of Sale is not submitted by you by such date, it will be assumed that you have elected not to purchase Unit 331; your deposit for this Unit will be returned immediately and the Unit will be placed back on the market.

R.R. at 75a.

On October 23, 1981, Rosen sent a letter to counsel for HRA reasserting his claim that he had certain "understandings" with HRA permitting him to purchase the condominium unit under certain specific provisions. Counsel for HRA responded in a letter dated November 2, 1981, noting that he had conferred with HRA and its employees and had confirmed that no agreement existed. This letter also stated that since Rosen had not executed an agreement of sale, his initial deposit was being returned and the unit had been placed on the market. A check in the amount of $5,282.64, representing Rosen's initial deposit plus interest, was enclosed in the letter. Rosen accepted and deposited the check in his account.

Rosen then commenced this suit in equity seeking to compel appellees to transfer the condominium unit to him and asking for damages for appellees' bad faith, misrepresentation, and breach of contract. Incident to the institution of this suit, Rosen caused lis pendens to issue against the premises. In response to Rosen's complaint, appellees filed an answer and new matter denying the existence of any agreement and asserting that Rosen's claim was barred by the Statute of Frauds.

On March 10, 1982, appellees filed a petition to strike the lis pendens, and on April 13, 1982, Rosen filed his answer to said petition. On or about May 10, 1982, the Honorable Charles A. Lord issued an opinion and order striking the lis pendens. This appeal timely followed.

Appellant Rosen states the sole issue on appeal as follows:

Where a Complaint alleges that defendants agreed to sell real estate to plaintiff, and alleges that defendants ratified that agreement repeatedly to plaintiff, and then reneged on their agreement, may the statute of frauds be used as an engine of fraud by defendants to allow them to remarket the property to others, and should plaintiff's lis pendens against the property be stricken without allowing discovery or a hearing?

Brief for Appellant at 1.

■ Our standard of review of equity cases is a narrow one.

[A]ppellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. *Commonwealth Dept. of Environmental Resources v. Pa. Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Delp v. Borough of Harrisville*, 25 Pa.Cmwlth. 486, 360 A.2d 758 (1976).

*Sack v. Feinman*, 489 Pa. 152, 165–66, 413 A.2d 1059, 1066 (1980), *decided after remand*, 495 Pa. 100, 432 A.2d 971 (1981).

■ Pursuant to these standards, we must examine whether the lower court abused its discretion or committed an error of law in striking the lis pendens. *"[L]is pendens* is based in common law and equity jurisprudence, rather than in statute, and is wholly subject to equitable principles." *Dorsch v. Jenkins*, 243 Pa.Super. 300, 305, 365 A.2d 861, 863–64 (1976). *Woods v. Peckich*, 473 Pa. 226, 373 A.2d 1345 (1977); *Dice v. Bender*, 383 Pa. 94, 117 A.2d 725 (1955). "[I]f the operation of the doctrine should prove to be harsh or arbitrary in particular instances, equity can and should refuse to give it effect, and, under its power to remove a cloud on title, can and should cancel a notice of lis pendens which might otherwise exist." *Dice v. Bender, supra*, 383 Pa. at 98, 117 A.2d at 727. Thus, the lower court must balance the equities to determine whether the

application of the doctrine is harsh or arbitrary and whether the cancellation of the lis pendens would result in prejudice to the non-petitioning party. *McCahill v. Roberts,* 421 Pa. 233, 219 A.2d 306 (1966).

Instantly, the lower court found that the equities favored appellees and required that the lis pendens be stricken. This result was based on the court's finding that "[t]here appears to be a substantial likelihood that [appellees] will prevail on the merits of this action, due to the possible bar by the Statute of Frauds of the alleged oral agreement of [appellant] and [appellees] regarding the Agreement of Sale." Lower ct. op. at 3. Since we agree that the equities favor appellees, we affirm.

Appellant contends that he had an agreement with HRA that certain "understandings" would be included in the Agreement of Sale for his condominium unit. Appellees deny that such an agreement ever existed. A thorough review of the documentary evidence of record clearly reveals that there is no written embodiment of the alleged agreement. A further examination of the contents of the documents seems to indicate that while Rosen had discussed certain "understandings" with HRA and its sales staff, no final agreement was ever reached.[2] Appellant argues, nevertheless, that an oral agreement existed between the parties.

The Statute of Frauds[3] mandates that contracts for the sale of real property be in writing. The purpose of the statute is to prevent the possibility of enforcing un-

---

2. After listing his "understandings" in the letter of January 30, 1981, appellant Rosen went onto state:

The foregoing are only some of the discussions, which I can recall at the writing of this letter, but I would be happy to sit down and discuss all the provisions of the Agreement of Sale *in order to arrive at a mutually acceptable agreement* at all parties convenience.

R.R. at 30a (emphasis added).

This indicates that no agreement had yet been reached. Further, none of the documents or letters from HRA or its counsel discuss any of the alleged "understandings." In fact, appellees specifically deny that any agreement ever existed.

3. Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1.

founded, fraudulent claims, by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest. *Burns v. Baumgardner*, 303 Pa.Super. 85, 449 A.2d 590 (1982). Instantly, it is clear that no writing exists which contains the signature of appellees and which indicates their acceptance of the alleged agreement.

■ Of course, the statute does not operate to absolutely invalidate an oral contract relating to land. Rather, it is intended to guard against perjury, and if a titleholder admits that he entered into an oral contract, the purpose of the statute is served and the oral contract will be enforced. *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 779 (1946). In the case at bar, however, appellees have specifically denied entering into any form of oral agreement with Rosen concerning any specific provisions to be included in the Agreement of Sale.

■ We agree with the lower court that appellant's contention that an oral agreement existed between the parties will most likely be barred by the operation of the Statute of Frauds. Given this likelihood, it would be inequitable to allow the cloud on title of Unit 33I to remain in effect. Thus, the lower court did not abuse its discretion in striking the lis pendens.[4]

Order affirmed.

WIEAND, J., concurred in the result.

[4] Appellant contends that, at the very least, we should remand the case to the lower court so that a hearing may be held. In *McCahill v. Roberts*, 421 Pa. 233, 219 A.2d 306 (1966), our supreme court stated:

Ordinarily, it would be wise in cases of this type for the lower court to take testimony to ascertain the exact nature and extent of any possible prejudice that could result from the cancellation of lis pendens. In this way, the balancing of the equities can be more accurately resolved. However, we conclude that, under the circumstances, such was not necessary in the present instance. We also note that in *Dice*, supra, the issue was determined without the taking of testimony.

*McCahill v. Roberts, supra*, 421 Pa. at 238, 219 A.2d at 309.

We find that under the circumstances of this case, as in *McCahill* and *Dice*, the taking of testimony was unnecessary. Appellant contends

that the testimony of Laurada Byers, HRA's sales representative,
would support his position. We find this highly unlikely. It was
Byers who supplied the verification in support of appellees' answer
and new matter and the affidavit in support of appellees' motion to
strike. Thus, Ms. Byers indicated that she agreed with the factual
statements contained in these pleadings which expressly denied the
existence of any agreement between the parties.