547 A.2d 1247

**Harold R. HOSTETTER, Jr. and Laura M. Hostetter, Appellees,**

v.

**George H. HOOVER and Esther M. Hoover, Appellants.**

Superior Court of Pennsylvania.

Argued June 14, 1988.

Filed Sept. 19, 1988.

2

Robert Glessner, York, for appellants.

John R. Gailey, Jr., York, for appellees.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

**WIEAND, Judge:**

George and Esther Hoover have appealed from an order specifically enforcing against them an agreement to sell to Harold and Laura Hostetter certain residential real estate situated in Hanover, York County. They contend that specific performance was barred by (1) the statute of frauds; (2) the statute of limitations; (3) laches; and (4) an absence of consideration for their promise to convey. These contentions are lacking in merit; and, therefore, we will affirm the trial court's decree.

In the autumn of 1979, George Hoover inquired whether Llewelyn Miller would be interested in buying premises known as 136 North Street in Hanover. The lot was irregular in shape and contained approximately one-seventh ($\frac{1}{7}$) acre, with a dwelling erected thereon. The house was badly in need of repair and was occupied by an elderly woman who had fallen behind in her payment of rent. Miller said that he was not interested in buying the same but that his daughter, Laura Hostetter, and her husband, Harold, might be interested. They were interested in buying, and, after discussion, a price of thirteen thousand ($13,000.00) dollars was orally agreed upon. The tenant was thereafter evicted, and the Hostetters, with the Hoovers' consent, began to make needed repairs. These repairs included replastering ceilings and walls, replacing the faucets and kitchen sink, installing a kitchen light fixture, hanging kitchen cupboards, replacing windows and a medicine cabinet, and installing a new door lock, as well as fumigating, painting, and carpeting the dwelling.

On January 12, 1980, the parties entered into a written agreement by which the Hoovers agreed to sell and the Hostetters agreed to buy the premises for thirteen thousand ($13,000.00) dollars. The sellers agreed to finance the purchase price, which was to be paid, together with interest at the rate of nine (9%) percent, in monthly payments of one hundred forty-seven and 95/100 ($147.95) dollars for a period of twelve years. Settlement was set for April 15, 1980, but time was not made of the essence. In February, 1980,

the Hostetters occupied the premises, paying the sum of sixty ($60.00) dollars per month in lieu of rent until final settlement.

Prior to April 15, 1980, Harold Hostetter was laid off by his employer, and the parties agreed orally to extend the time for settlement until July 15, 1980. George Hoover rejected a suggestion that the extension be made the subject of a written agreement, saying it was unnecessary. During the intervening months, the Hostetters continued to pay rent at the rate of sixty ($60.00) dollars per month. Prior to July 15, 1980, the Hostetters attempted to make arrangements for final settlement, but George Hoover said it was inconvenient for him to make settlement at that time, and final settlement was delayed indefinitely. The agreement to pay rent at the rate of sixty ($60.00) dollars was also extended indefinitely until final settlement.

Neither party attempted to reschedule final settlement for several years thereafter, although the matter was discussed generally from time to time. The Hostetters continued to occupy the premises during this time, paying rent as agreed and continuing to make repairs. These repairs included wallpapering, replacing the toilet, installing new curbing and sidewalk, enlarging the garage and hanging a new garage door, installing new electrical service to the garage, rebuilding a back porch, replacing a brick patio and landscaping the property. In or about February, 1985, George Hoover arranged and paid for the installation of a new furnace. The price, which was one thousand, five hundred ninety ($1,590.00) dollars, was by agreement to be added to the purchase price. About the same time, the Hostetters began to pay to the Hoovers the sum of one hundred ($100.00) dollars per month as rent.

In August, 1985, Harold Hostetter again attempted to arrange for final settlement, only to be told that the sellers now wanted thirty-five thousand ($35,000.00) dollars for the property and would not transfer title for less. The buyers declined to pay the increased consideration, contending that the price established by their agreement was thirteen thou-

sand ($13,000.00) dollars. An action for specific performance of the agreement was thereafter commenced. While the action was pending, the Hostetters continued to pay rent to the Hoovers, which, in August, 1986, was raised to one hundred seventy-five ($175.00) dollars per month, and, in January, 1987, to two hundred twenty-five ($225.00) dollars per month. Since March, 1987, the rent has been paid into an escrow account.

At trial, the Hostetters' version of the facts, as we have recited them, was corroborated by Llewelyn Miller and his wife. George Hoover, however, denied having agreed to any extension of the date for final settlement beyond that specified by the written agreement. He asserted that the buyers had failed to appear for settlement and had later agreed to rent the dwelling house. The trial court found the buyers' evidence more credible and found that the agreement of sale had been extended by oral agreement of the parties. Therefore, a decree of specific performance was entered. Exceptions were dismissed, and this appeal followed.

Our standard of review is narrow, for we are bound by the trial court's determinations pertaining to the credibility of the witnesses and the weight to be accorded to the evidence. *Concorde Investments, Inc. v. Gallagher*, 345 Pa.Super. 49, 59, 497 A.2d 637, 642 (1985); *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 114, 464 A.2d 1243, 1255 (1983).

> [A]ppellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. *Commonwealth Dept. of Environmental Resources v. Pa. Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Delp v. Borough of Harrisville*, 25 Pa.Cmwlth. 486, 360 A.2d 758 (1976).

*Rosen v. Rittenhouse Towers*, 334 Pa.Super. 124, 129, 482 A.2d 1113, 1116 (1984), citing *Sack v. Feinman*, 489 Pa.

152, 165–166, 413 A.2d 1059, 1066 (1980), *decided after remand*, 495 Pa. 100, 432 A.2d 971 (1981).

■ The statute of frauds[1] directs that agreements for the sale of real estate shall not be enforced unless they are in writing and signed by the seller. The purpose of the statute is to prevent perjury and fraudulent claims. See: *Brotman v. Brotman*, 353 Pa. 570, 573, 46 A.2d 175, 177 (1946); *Rosen v. Rittenhouse Towers, supra* 334 Pa.Super. at 130–131, 482 A.2d at 1116–1117; *Fannin v. Cratty*, 331 Pa.Super. 326, 331, 480 A.2d 1056, 1058 (1984). As a general rule, the effect of the statute is to render oral contracts for the sale of real estate unenforceable, although not invalid. Therefore, they cannot be specifically enforced, even though they may possibly form the basis for an action to recover damages. See: *Polka v. May*, 383 Pa. 80, 118 A.2d 154 (1955); *Weir v. Rahon*, 279 Pa.Super. 508, 421 A.2d 315 (1980).

■ Appellants contend that the written agreement is unenforceable because it was modified by parol. They rely upon the rule that the parties generally may not alter by parol the terms of an agreement required by the statute to be in writing and thereby create a contract resting partly on the writing and partly in parol. See: *United States v. 29.16 Acres*, 496 F.Supp. 924 (E.D.Pa.1980); *Brown v. Aiken*, 329 Pa. 566, 198 A. 441 (1938). However, "[o]ral modifications of a contract required by the statute of frauds to be in writing which relate to the manner of performance do not change the character of the written agreement and are enforceable." 16 P.L.E. Frauds, Statute of § 76. Thus, a modification as to the time of settlement for a contract for the sale of real estate does not result in a new and substituted agreement and does not reduce the written contract to one in parol. This issue was considered by the Supreme Court of Pennsylvania in *Novice v. Alter*, 291 Pa. 64, 139 A. 590 (1927), where the Court said:

The rule is, as shown by decisions already cited, that if a mere alteration of some term of performance is made

1. Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1.

for the convenience of the parties, the character of the agreement as a writing is not altered.

Like cases have arisen where specific performance of a contract, changed merely as to the manner of carrying out some condition, has been asked, and the courts have granted relief though the statute of frauds requires the terms to be in writing. Thus, where an oral agreement to extend the time of carrying out the written agreement of sale, is proven, the alteration of this term has been held not to affect the character of the instrument as a writing. Such modifications as to time or mere terms of perform-ance, which do not result in the making of a new and substituted agreement, are held not to reduce the con-tract to one in parol: *Jordan v. Cooper,* 3 S. & R. 564; *Wilgus v. Whitehead,* 89 Pa. 131. Cases in other jurisdic-tions where alterations were made similar to those found here, and the action on the writing sustained, will be found in *Welch v. McIntosh,* 89 Kan. 47, 130 Pac. 641; *Anderson v. Moore,* 145 Ill. 61, 33 N.E. 848; *Low v. Treadwell,* 12 Me. 441.

*Id.,* 291 Pa. at 70–71, 139 A. at 592. See also: *Burg v. Betty Gay of Washington, Inc.,* 46 Wash.Co. 163 (1966), *aff'd,* 423 Pa. 485, 225 A.2d 85 (1966); *Nugent v. Duncan,* 104 P.L.J. 335, 11 D. & C.2d 179 (1956). See generally: 37 C.J.S. Frauds, Statute of § 232b (discussing split among other jurisdictions on whether oral extension of time vio-lates statute, and citing cases). This, of course, is in keeping with the long existing rule in this Commonwealth that the time fixed for settlement in an agreement for the sale of real property can be extended by oral agreement or waived by the conduct of the parties. See: *Warner Co. v. MacMullen,* 381 Pa. 22, 29, 112 A.2d 74, 78 (1955); *DiGiu-seppe v. DiGiuseppe,* 373 Pa. 556, 559, 96 A.2d 874, 875 (1953); *Cohn v. Weiss,* 356 Pa. 78, 81, 51 A.2d 740, 742 (1947); *Hopp v. Bergdoll,* 285 Pa. 112, 115, 131 A. 698, 699 (1926); *Smith & Fleek's Appeal,* 69 Pa. 474, 481 (1871).

[4] Moreover, there is an exception to the statute of frauds which holds that specific performance of an oral

contract for the sale of real estate may be ordered where it appears that continuous and exclusive possession of the subject property was taken under the oral contract and improvements were made by the buyer which are not readily compensable in money. *Zlotziver v. Zlotziver*, 355 Pa. 299, 302, 49 A.2d 779, 781 (1946); *Concorde Investments, Inc. v. Gallagher, supra* 345 Pa.Super. at 56, 497 A.2d at 640; *Briggs v. Sackett*, 275 Pa.Super. 13, 16–17, 418 A.2d 586, 588 (1980). In such instances, equity will enforce the contract to prevent a greater injustice.

■ In the case sub judice, the Hostetters took exclusive possession of the property and made substantial improvements based on the agreement which they had reached with the Hoovers to purchase the house. They continued to make substantial improvements after the April 15, 1980, settlement date because of the sellers' oral agreements to extend the settlement date. The Hostetters produced specific evidence that they had expended over three thousand ($3,000.00) dollars on material costs and at least 452 hours of labor in making improvements to the interior of the home alone. They and their three school-age children settled in this once-dilapidated house and transformed it into a comfortable home in which they lived for more than eight years. A refusal to enforce the contract under these circumstances would be inequitable and unjust. See: *In re Estate of Brojack*, 321 Pa.Super. 154, 167, 467 A.2d 1175, 1182 (1983); *Briggs v. Sackett, supra; Eastgate Enterprises, Inc. v. Bank and Trust Co. of Old York Road*, 236 Pa.Super. 503, 506, 345 A.2d 279, 280 (1975). See generally: 16 P.L.E. Frauds, Statute of § 74. Appellees' evidence of possession and substantial improvements, therefore, was sufficient to take the contract out of the statute of frauds.

■ The buyers' action also was not barred by the statute of limitations,[2] or by laches. The trial court found, based

2. The statute of limitations requires that an action to enforce a contract for the sale of real estate be brought within five years. 42 Pa.C.S. § 5526.

upon ample evidence, that "the [Hoovers], instead of attempting to exercise [their] rights to require performance under the contract lulled the [Hostetters] into sleep by assuring them that everything was OK and that their rights under the contract were still enforceable." Intentional acts by a seller calculated to induce a buyer not to pursue his rights diligently will cause the seller to be estopped from asserting the bar of the statute of limitations or the defense of laches. See: *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 204 A.2d 473 (1964); *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963). A court will not allow a vendor to "use his own indulgence as a trap in which to catch the purchaser." *Cohn v. Weiss, supra* 356 Pa. at 84, 51 A.2d at 743.

■ Appellants' final contention is also lacking in merit. The contract was fully supported by consideration consisting of mutual promises. No consideration was required to support the sellers' subsequent waiver of the time of performance specified by the written agreement. See generally: 17A C.J.S. Contracts § 492(1). A time limit can be waived merely by the consent by the other party. 8 P.L.E. Contracts § 242; 3A Corbin on Contracts § 722. Here, the sellers did not insist upon performance at the time required by the original contract but acquiesced in and even requested delay beyond the time of settlement established by the written agreement. Only when it became apparent that the real estate had increased in value did the sellers attempt to repudiate their agreement and withdraw their waiver of the time for settlement without giving the buyers notice and a reasonable opportunity to fulfill the terms of the agreement. This they could not do. See, e.g.: *Warner Co. v. MacMullen, supra; Cohn v. Weiss, supra.*

DECREE AFFIRMED.