J-A04017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

DONNA EVERETT : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RALPH ELLIOTT :
:
Appellant : No. 1780 EDA 2023

Appeal from the Judgment Entered November 7, 2023
In the Court of Common Pleas of Carbon County Civil Division at No(s):
21-0466

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED MAY 9, 2024**

Ralph Elliott appeals from the order finding that a septic system Elliott installed on Donna Everett's property constituted a trespass and requiring that Elliott remove it. The court also found Elliott was not entitled to equitable relief. We affirm.

Everett and Elliott own separate properties in Weatherly, Carbon County. Everett filed a Complaint against Elliott seeking the removal of the septic system that Elliott had installed on Everett's property, recovery of possession, and monetary damages. Elliott filed an Answer, New Matter, and Counterclaim, asserting he had permission from the prior owner to install the septic system based on an oral agreement with the prior owner to convey the property to Elliott. Elliott sought enforcement of the oral agreement.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The court held a non-jury trial, after which it issued the following findings of fact.

>    1. . . . Everett[] is the owner of real property situated at 223 Buck Mountain Road, Weatherly, Carbon County, Pennsylvania, with a legal description of Lot 12, Parcel No. 92-27-B12.12, and Lot 13, Parcel No. 92-27-B12.02.
>
>    2. . . . Elliot[] is the owner of real property situated at 223 Buck Mountain, Road, Weatherly, Carbon County, Pennsylvania, with a legal description of Lot 14, Parcel No. 92-27-B23.
>
>    3. Markle Everett [("Markle")] was the prior owner of Lot 12, Lot 13 and Lot 14.
>
>    4. On March 1, 2018, [Elliott] withdrew nine thousand dollars ($9,000.00) from his account at Police and Fire Federal Credit Union.
>
>    5. [Elliott] testified that in March of 2018, he paid [Markle] ten thousand dollars ($10,000.00) for approximately two (2) acres of land that was intended to include Lot 13, Lot 14 and part of Lot 12.
>
>    6. George Dunson and Buddy Elliot both testified that they witnessed a monetary transaction between [Elliott] and [Markle].
>
>    7. [Markle] acquired Lot 12, Lot 13 and Lot 14 by way of deed dated May 11, 2018 and recorded on May 23, 2018.
>
>    8. [Markle] conveyed Lot 14 to [Elliott] by way of deed dated May 2, 2019 and recorded on May 6, 2019.
>
>    9. The deed to [Elliott] conveyed 0.554 acres.
>
>    10. [Markle] and [Elliott] indicated in the deed that the cash consideration for the conveyance was one dollar ($1.00) when the true cash consideration was allegedly ten thousand dollars ($10,000.00). This was done to minimize the tax consequences to [Markle] and [Elliott]. The county assessed value for Lot 14 was three thousand four hundred fifty dollars ($3,450.00) and the computed value was seven

thousand five hundred fifty-five dollars and fifty cents ($7,555.50).

11. [Everett] and [Markle] were married on June 27, 2019.

12. Devon Dolinsky is a landscaper and owner of Buck Mountain Landscape Supply, LLC.

13. Mr. Dolinsky testified that in the summer of 2019, [Elliott] hired him to remove trees from Lot 13 for the installation of a driveway and septic system and that [Markle] assisted with the tree removal as a part-time employee.

14. On July 8, 2019, [Elliott] filed with Lehigh Township an "Application for an Onlot Sewage Disposal System Permit" seeking to install a septic system on Lot 14.

15. The septic system permit application form submitted by [Elliott] notes that the size of the subject lot is 0.554 acres.

16. On August 27, 2019, Lehigh Township Sewage Enforcement officer William C. Brior issued a sewage disposal system permit to [Elliott] for an elevated sand mound septic system.

17. The septic system was installed in September of 2019.

18. At the time of installation, the surveyor hired by [Elliott] informed him that the site where the septic system was to be installed was not his property.

19. [Elliott] testified that [Markle] had spoken to him about amending the deed, but neither an amended deed nor a corrected deed was ever prepared or filed.

20. The septic system was installed partially on Lot 13 and partially on Lot 14.

21. [Markle] died on October 29, 2019.

22. [Everett], as administratrix of [Markle's] estate, conveyed Lot 12 and Lot 13 to herself as surviving spouse by way of deed dated September 16, 2020 and recorded on September 18, 2020.

23. Robert E. O'Neill, P.L.S., is a professional land surveyor.

24. In May of 2020, Mr. O'Neill performed survey work at [Everett's] property on behalf of [Everett] and concluded that the septic system is situated partially on Lot 13 and partially on Lot 14.

25. On October 6, 2020, [Elliott] filed a *Lis Pendens* against Lot 13 in the case indexed to docket number 20-2427.

26. In the spring of 2021, [Elliott] moved his trailer to Lot 14 and connected it to the subject septic system.

Decision and Verdict, filed Nov. 10, 2022, at 2-4.

The trial court concluded that Elliott's installation of the elevated sand mound septic system on Lot 13 constituted a trespass on Everett's property and that Everett was entitled to removal of the septic system. *Id.* at 11. It further concluded that Elliott was not entitled to the equitable relief he sought because he had unclean hands. *Id.* It therefore found in Everett's favor both on her claims for ejectment and trespass and on Elliott's counterclaim. Verdict, Nov. 10, 2022. It ordered Elliott to remove the sand mound septic system from Lot 13 within 90 days from the date of the verdict. *Id.* It further ordered that Elliott pay the costs of the proceeding and that his *lis pendens* be stricken.

Elliott filed a post-trial motion, which the court denied. He then filed a timely notice of appeal.

Elliott raises the following issues:

1. Whether the trial court was in error in failing to apply the doctrine of Estoppel by Deed to a sale of real property when the Seller did not acquire title to the subject property until after the Agreement of Sale had been entered.

2. Whether the trial court was in error in invalidating an agreement of sale, the existence of which was acknowledged by the trial court, on the ground that the verbal agreement did not include a precise description of the

- 4 -

land to be conveyed. The error of the court was in failing to take into consideration the subsequent actions of the parties (i.e. parol evidence) which clearly indicated that the parties had included Lot 13 in the agreement of sale.

3. Whether the court was in error in failing to direct [Everett] to convey Lot 13 to [Elliott] when she also saw the work as it was being performed on Lot 13 during the months before her husband died.

4. Whether the [c]ourt was in error in failing to apply the equitable doctrine of Promissory Estoppel to the facts of this case[.]

5. Whether the [c]ourt was in error in failing to find that the Buyer's the [sic] substantial investment in Lot 13 constitutes detrimental reliance on the failure of the Seller to object to the work.

Elliott's Br. at ii-iii (suggested answers and emphasis omitted).[1]

When reviewing a non-jury verdict, we must "determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." **Stephan v. Waldron Elec. Heating and Cooling LLC**, 100 A.3d 660, 664 (Pa.Super. 2014) (citation omitted). "As fact finder, the judge has the authority to weigh[] the testimony of each party's witnesses and to decide which are most credible." **Parker Oil Co. v. Mico Petro and Heating Oil, LLC**, 979 A.2d 854, 856 (Pa.Super. 2009) (citation omitted). The findings of the trial court

_____

[1] In the argument section of his brief, Elliott "objects to the trial court's 'findings of fact' because of the omission of facts which determines the outcome of this case." Elliott's Br. at 1. He notes that the trial court found Markle and Elliott had an oral agreement, but did not include that in its factual findings. He also challenges other facts found by the court. Elliott did not include this issue in his statement of questions involved, and it therefore is waived. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

"must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record." **Levitt v. Patrick**, 976 A.2d 581, 589 (Pa.Super. 2009) (citation omitted). "[W]e consider the evidence in a light most favorable to the verdict winner." **Id.** (citation omitted).

We will address Elliott's first two issues together. In his first issue, Elliott argues the trial court erroneously failed to apply the doctrine of estoppel by deed. He claims that if a seller agrees to sell property to which he does not have title, but later acquires the property, he must deed the property to the buyer. **See** Elliott's Br. at ix. He claims both he and Markle treated Lot 13 as Elliott's land, pointing out Markle assisted with the removal of trees. He claims Markle had a duty to speak and his failure to do so meant that Everett could not later exercise a legal right against Elliott.

In his second issue, Elliott claims the court erred in finding the oral contract was not enforceable because the parties had not discussed the boundaries. He claims that he took possession of Lot 13 by removing trees and installing the septic system, Markle did not object, and Markle helped remove the trees. Elliott argues that "[t]aking unopposed possession of property is a convincing form of describing the property subject to the agreement." **Id.** at x. He also states that he was to receive more than an acre of land, which would have happened had he possessed Lot 13. He claims the law is that the boundaries must be established by a preponderance of the

evidence and claims if the court had considered parol evidence, it would have reached a different outcome.

"[T]he doctrine of estoppel by deed precludes one who conveys an interest in land that he does not own, but subsequently acquires the title thereto, from denying the validity of the first conveyance." **Shedden v. Anakarko E. & P. Co., L.P.**, 136 A.3d 485, 492 (Pa. 2016).

"The statute of frauds directs that agreements for the sale of real estate shall not be enforced unless they are in writing and signed by the seller." **Hostetter v. Hoover**, 547 A.2d 1247, 1250 (Pa.Super. 1988) (footnote omitted). "As a general rule, the effect of the statute is to render oral contracts for the sale of real estate unenforceable, although not invalid." **Id.**

The statute of frauds notwithstanding, an oral contract for real estate is enforceable if numerous requirements are met. The terms of the contract "must be shown by full, complete, satisfactory proof." **Kurkland v. Stolker**, 533 A.2d 1370, 1373 (Pa. 1987). "The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the consideration." **Id.** The evidence also

> must establish the fact that possession was taken in pursuance of the contract, and, at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.

**Id.**

In its Rule 1925(a) opinion, the trial court found Elliott's argument that doctrine of estoppel by deed required relief was misplaced, noting Markle purchased the property in May 2018 and in May 2019 conveyed to Elliott Lot 14, and nothing was in writing that Elliott had an interest in Lot 12 or Lot 13:

> [I]t is undisputed that Markle . . . acquired Lot 12, Lot 13, and Lot 14 by way of deed dated May 11, 2018. Therefore, he did not own the subject property at the time of the oral agreement in March of 2018. Nevertheless, [Elliott] contends that because [Markle] later purchased the property and was able to produce marketable title on the date the parties chose for the conveyance, the doctrine of estoppel by deed should apply. However, during the fourteen (14) month period between the oral agreement and the conveyance, absolutely nothing was reduced to writing which referenced [Elliott] having an interest in Lot 12 or Lot 13. It was not until May 2, 2019, that title was transferred to [Elliott] and the only title that was transferred by Markle . . . was title to Lot 14 which consists of 0.544 acres. Thus [Elliott's] argument concerning the doctrine of estoppel by deed is misplaced and without merit.

Trial Court Opinion, filed Sept. 12, 2023, at 8-9.

The trial court further concluded that any oral agreement for more than Lot 14 was unenforceable because Elliott failed to sustain his burden of proof to overcome the statute of frauds:

> [Elliott] contends that there was a meeting of the minds between himself and Markle . . . regarding the location of the property subject to the agreement of sale. [Elliott] maintains that this meeting of the minds may be evidenced by the installation of the septic system and driveway and by the deed which conveyed to him one of the three adjoining lots. However, at trial [Elliott] admitted that the precise boundaries of the land he believed he was receiving from Markle . . . were never discussed. [Elliott] testified that it could have been 1.7 or 1.9 acres that was agreed to, as opposed to exactly two acres. Furthermore, . . . for Markle

. . . to have conveyed a portion of Lot 13 to [Elliott], a subdivision of that lot would have been required and [Elliott] produced no evidence at the time of trial to demonstrate that the subdivision process had been contemplated or discussed, much less begun.

In the instant matter, other than the oral agreement concerning Lot 14, there was no agreement between Markle . . . and [Elliott]. The fact that Markle . . . and [Elliott] never discussed specific boundaries and [Elliott] testified as to his understanding that the dimensions could have been 1.7 acres or 1.9 acres, shows that there was no meeting of the minds. Boundaries and dimensions are material terms. *Fire Tree LTD v. Dep't of General Servs.*, 978 A.2d 1067 (Pa.Cmmwlth.Ct. 2009). When seeking an equitable remedy, the [c]ourt is not permitted to make a contract. The equitable decree must always form to a precise contract and here, since there were no precise boundaries or acreage agreed upon by Markle . . . and [Elliott], th[e c]ourt cannot simply carve out a portion of Lot 13 and transfer it to [Elliott] because he believes it would be equitable to do so.

Moreover, an alleged oral agreement to sign a contract in the future is nothing more than an unenforceable "agreement to agree." *Landon v. Walmart Real Estate Business Trust, No. 2*, 12 CV-926, 2015 WL 149257 (W.D. Pa. 2015). When a party is asserting unrecorded rights to real estate, that party has the burden of proof. *Lund v. Heinrich*, 189 A.2d 581 (Pa. 1963); *Carnegie Natural Gas Co. v. Braddock*, 597 A.2d 285 (Pa.Cmwlth.Ct. 1991). The burden of proof that must be sustained under such circumstances is very high. Specifically, the "terms of the contract must be shown by full, complete and satisfactory proof," and the proponent must provide evidence "of such weight and directness as to make out the facts alleged beyond a doubt." *Kurland v. Stolker*, 533 A.2d 1370, 1373 (Pa. 1987); *Fire Tree LTD*, 978 A.2d at 1075 . . . . Here, [Elliott] has failed to satisfy his burden of proof.

*Id.* at 9-11.

The record supports the trial court's findings and it did not err as a matter of law in finding the doctrine of estoppel by deed provided no relief

and that any oral agreement was unenforceable. Here, after Elliott and Markle reached an agreement, Markle purchased the land and then deeded Lot 14 to Elliott. For the oral agreement to have included more than Lot 14, Elliott would have had to meet the high burden of proof required to establish the statute of frauds did not apply. That Markle may have been aware that Elliott removed trees on the property does not establish the necessary proof of boundaries required to establish that the agreement was for anything more than Lot 14. Elliott failed to present sufficient evidence that the parties had reached an agreement as to the boundaries that would be included in any agreement, beyond Lot 14, which had already been conveyed.

Elliott further contends that the court erred in finding he trespassed because there was no finding that he knew Lot 13 was not subject to the agreement he had with Markle.

"In Pennsylvania, a trespass occurs when a person who is not privileged to do so intrudes upon land in possession of another, whether willfully or by mistake." **Briggs v. Sw. Energy Prod. Co.**, 224 A.3d 334, 346 (Pa. 2020). "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." Restatement (Second) of Torts, § 161(1) (1965).

The trial court concluded the installation of the septic system on Lot 13 constituted a trespass:

> After determining that the oral agreement between [Elliott] and Markle . . . was unenforceable, this Court concluded that [Elliott's] installation of a septic system on Lot 13 constituted a trespass. . . .
>
> [Elliott] testified he knew that the deed dated May 2, 2019 conveyed only Lot 14 to him and that Lot 14 consisted of 0.554 acres. However, prior to the installation of the septic system, a surveyor hired by [Elliott] informed him that the site where the septic system as to be installed was partially on Lot 13, which he did not own. Despite the fact that [Elliott] knew he did not own the entire property, he proceeded with the project and had the septic system installed partially on Lot 13 and partially on Lot 14. Based upon the foregoing, we found that [Elliott's] installation of the septic system constitutes an ongoing trespass relative to [Everett's] property.

Trial Ct. Op. at 13-14 (citations to record omitted).

The record supports the trial court's findings and it did not err in concluding Elliott's septic system constituted a trespass. The system was on Everett's property without her permission.

We next address Elliott's third, fourth, and fifth claims together. Elliott cites an equitable maxim, "that is certain which can be made certain," and argues that courts have referred to the actions of parties following the entry of an agreement of sale to identify the land subject to the agreement. Elliott's Br. at x-xi. He argues he took possession of Lot 13 with the consent and knowledge of Markle and the agreement was for more than one acre. He claims this is evidence that the parties agreed Lot 13 was part of the agreement. He further maintains the court erred in finding he had unclean hands because there was evidence both Elliott and Markle believed Lot 13 was subject to the agreement and no evidence Elliott did not act in good faith.

Elliott next argues that it was uncontested that he invested substantial sums of money in Lot 13 with Markle's knowledge and without his objection.[2] He claims he was therefore justified in believing Lot 13 was part of the agreement of sale. He maintains that the court failed to take into consideration that, although the septic system was installed outside of Lot 14, the actions of parties established they sought to complete the agreement of sale. He maintains the intent of the parties was to provide Elliott with the site for his trailer and the installation of the driveway and septic system on Lot 13 was "strong evidence that the parties intended to include Lot 13 in the agreement." *Id.* at 11. Elliott argues the trial court erred in not considering the cost he incurred for clearing a wooded lot and installing an elevated sand mound septic system while Markle watched him.

"The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." *Morgan v. Morgan*, 193 A.3d 999, 1005 (Pa.Super. 2018) (quoting *Lee v. Lee*, 978 A.2d 380, 387 (Pa Super. 2009) (emphasis omitted). "A court may deprive a party

---

[2] "Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (citation omitted). "[T]o maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Id.*

- 12 -

of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Id.* (quoting *Terraciano v. Com., Dep't of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237 (Pa. 2000)).

The trial court concluded Elliott had unclean hands and therefore was not entitled to specific performance or relief on his promissory estoppel claim:

> [Elliott] fail[ed] to recognize that he made false statements in his septic application. As previously discussed, [Elliott] was told by his surveyor that the removal of trees and installation of the septic system were going to be partially performed on Lot 13, in which [Elliott] had no legal ownership interest. In his testimony, [Elliott] admitted that although the surveyor did inform him that the septic system would be partially installed on Lot 13, he indicated on his septic application that the system would be installed solely on Lot 14. Thus, by falsely representing on the application that the septic system would be installed on Lot 14, [Elliott] clearly engaged in deceit and misconduct, and has come into court with unclean hands. As a consequence, he is not entitled to specific performance.
>
> . . .
>
> [Elliott] claims that he detrimentally relied on a promise allegedly made by Markle . . . to convey Lot 13 and part of Lot 12 when he removed the trees, installed the septic system and connected his trailer to the system. However, as discussed hereinabove, [Elliott] knew that he did not possess an ownership interest in Lot 13 when he removed the trees from the area and installed the septic system partially on that property. As previously noted, the doctrine of unclean hands allows a court to "deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue." *Terraciano v. Dep't of Transp., Bur. Of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000). "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to

- 13 -

the controversy at issue." ***Morgan v. Morgan***, 193 A.3d 999, 1005 (Pa.Super. 2018). Therefore, under the facts of this case, we find that [Elliott] is not entitled to equitable relief under the doctrine of promissory estoppel.

Trial Ct. Op. at 15, 16-17 (citation to record omitted).

The court did not abuse its discretion or err as a matter of law in finding Elliott was not entitled to equitable relief. Elliott knew that he did not own Lot 13 when he installed the septic system partially on Lot 13, and he submitted an application stating the system would be only on Lot 14, again knowing it would not. The court did not err in finding he had unclean hands and therefore was not entitled to equitable relief.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/09/2024

- 14 -