**In re Estate of Kenneth A. BOWMAN, Deceased.**

**Appeal of: Percy D. BOWMAN**

Superior Court of Pennsylvania.

Argued March 19, 2002.
Filed April 22, 2002.

Larry D. Lashinsky, Hollidaysburg, for appellant.

Linda M. Gunn, Bedford, for appellee.

Before: JOHNSON, BENDER and MONTEMURO *, JJ.

\* Retired Justice assigned to Superior Court.

1. We note that the final decree entered here is appealable, and distinguishable from the interlocutory order appealed in *In Re Estate of Habazin*, 451 Pa.Super. 421, 679 A.2d 1293 (1996). In *Habazin*, the appellants appealed a trial court order approving the private sale of real estate included in the decedent's estate. *Id.* at 1294. We held that the order was interlocutory because "(1) a sale has neither taken place nor been confirmed, and (2) the estate from which the sale will be carried out remains under administration." *Id.* at 1295. Here, however, the decree *nisi*, made final on September 5, 2001, directed the Clerk of

MONTEMURO, J.

¶ 1 This is an appeal from the final decree entered September 5, 2001, in the Bedford County Court of Common Pleas, granting Appellees' petitions to convey real estate.[1] We affirm.

¶ 2 The subject of this dispute is approximately 100 acres of land owned by Kenneth Bowman at the time of his death in October of 1999. The parties, Appellant Percy Bowman, and Appellees Merritt Bowman and Anna Marie Layton, are Bowman's children and co-executors of his estate. Although their father's will divides his estate equally among the siblings,[2] Appellees petitioned the court for delivery of the deed to this land based on agreements of sale executed in the late 1960's.

¶ 3 In 1968, Kenneth Bowman and his wife Verna entered into agreements of sale with Appellees, their son, Merritt Bowman, and their daughter, Anna Marie Layton.[3] Pursuant to the Agreements, Merritt was to receive over 300 acres of land, and Anna Marie was to receive over 200 acres of land for the purchase price of $6,666.66 each, payable in monthly installments of $74.00. Some of the land included in the Agreements was owned by the Bowmans at that time, the rest was purchased thereafter using the Agreements as collateral. The Articles of Agreement provided that title to the land would not pass

Courts to execute deeds in favor of Appellees. There is no sale to be finalized or proceeds to be distributed. Indeed, the court determined that, pursuant to contract, the deed to the land passed to Appellees upon the death of the decedent. Thus, the land was never actually part of the estate.

2. Kenneth Bowman also directed that 10% of his net estate be donated to the Church of God the Eternal.

3. Anna Marie's husband Gary was also a party to the agreement.

until the death of the Bowmans. Moreover, the pre-printed part of the Agreements also obligated the purchaser to pay all taxes and insurance on the land.

¶ 4 Merritt and Anna Marie made timely payments to a local bank from 1968 until 1973, when the loans were paid in full. However, neither purchaser ever paid any taxes or insurance. In addition to the obligations set forth in the Agreements, both Merritt and Anna Marie promised to work on the farm, and did so for several years. Anna Marie testified that her father offered Appellant the same opportunity to buy into the farm, but he declined.

¶ 5 Over the years, Kenneth and Verna Bowman sold to third parties tracts of land that were included in the Agreements. They never refunded any purchase money to Appellees, or offered any explanation for their actions. Anna Marie testified that she did not seek legal recourse because she did not want to get her parents into trouble. (N.T., 4/16/01, at 37, 60).

¶ 6 Kenneth Bowman died testate on October 26, 1999; his wife Verna had died 10 days earlier. On February 14, 2001, Appellees petitioned for leave of court to deliver the deed to the remaining land in their father's estate. Appellant filed a response and new matter denying that the agreements were ever paid in full, claiming that Appellees breached the agreements by failing to pay taxes and insurance, and arguing that Appellees failed to produce the agreements promptly after their father's death.

¶ 7 Following a hearing, the trial court entered a decree *nisi*, granting Appellees' petitions to convey real estate. Appellant filed a timely motion for post trial relief. On September 26, 2001, the court denied Appellant's motion and entered a final decree. This appeal follows.

¶ 8 Appellant raises the following three issues in his brief:

1. Did Appellees present clear and convincing evidence of an oral modification of the Articles of Agreement?
2. Did the trial court err in concluding that a breach by the sellers was sufficient to grant specific performance of the Agreements?
3. Did the trial court err in concluding that the estate was barred by laches from asserting a breach of the Agreements by Appellees?

*See* Appellant's Brief at 4. For the reasons set forth below, we affirm.

¶ 9 Our review of a final decree in equity is limited to determining whether the chancellor abused his discretion or committed an error of law. *Roberts v. Estate of Pursley*, 718 A.2d 837, 840 (Pa.Super.1998), *cert. denied*, 531 U.S. 1075, 121 S.Ct. 769, 148 L.Ed.2d 668 (2001). This Court will not disturb a final decree unless it is demonstrably capricious or unsupported by the evidence. *Id.* However, "we are not bound by the chancellor's conclusions of law; rather, where the rules of law on which the chancellor relied are palpably wrong or clearly inapplicable, we will reverse the chancellor's decree." *In Re Estate of Cambest*, 756 A.2d 45, 50 (Pa.Super.2000) (citations and internal quotations omitted).

¶ 10 In the present case, the trial court found that both the Bowmans and Appellees breached the Articles of Agreement: the Bowmans sold hundreds of acres of land which was subject to the Agreements, and which, therefore, they did not own; and Appellees failed to pay taxes and insurance on the land as required by the Agreements. The court further concluded that the estate was barred by laches from seeking redress for Appellees' breach, and that Appellees could claim the remaining land pursuant to the Articles of Agree-

ment. Consequently, it ordered specific performance of the Agreements.

¶ 11 In his first issue, Appellant contends that Appellees failed to present clear and convincing evidence of an oral modification of the Articles of Agreement, and that the trial court ignored this claim. Anna Marie testified that neither she nor her brother paid any taxes or insurance on the land because their father told them that they did not have to do so until title to the land passed to them. (N.T., 4/16/01, at 50). Appellant concedes that "a written agreement can be modified by a subsequent oral agreement provided the latter is based upon a valid consideration and is proved by evidence which is clear, precise and convincing." *Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298, 299 (1961). He contends, however, that here, Anna Marie's vague testimony alone is insufficient to prove a modification, and, in any event, Appellees failed to produce any evidence that the modification was supported by valid consideration.

¶ 12 What Appellant fails to acknowledge, however, is that the trial court did not find there was an oral modification of the written Agreements. Rather, the court concluded that Appellees breached the Agreements by failing to pay taxes and insurance, but that the estate was barred by laches from seeking to rescind the Agreements based on this breach. (Findings of Fact and Conclusions of Law at 4). Therefore, Appellant's first argument is moot.

¶ 13 In his next two issues, Appellant claims, in cursory fashion, that the trial court erred as a matter of law in concluding that (1) a breach by the Bowmans was sufficient to justify the court's grant of specific performance of the Agreements, and (2) the estate was barred by laches from asserting a breach by Appellees. Although we could find these issues

waived based on Appellant's failure to provide any citations to pertinent authority, *Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1381 (1995) (citing Pa.R.A.P. 2119(a)), we will address them briefly.

¶ 14 It is undisputed that the Bowmans breached the Articles of Agreement by selling acreage specifically included in the Agreements. Indeed, although the Agreements clearly and unambiguously provided that more than 500 acres of land would pass to Appellees upon the death of the Bowmans, only 100 acres remained at the time of Kenneth Bowman's death. Appellant's contention that the Bowmans' breach was a "separate and distinct issue," (Appellant's Brief at 18), is therefore specious. Appellees paid off their land in full 26 years before they were entitled to receive it. Now, that the time has finally arrived, they will receive only a fraction of what they bargained for, since their parents sold land which rightfully belonged to them.

¶ 15 Appellant also claims that the trial court erred in applying the doctrine of laches. We disagree. The doctrine of laches is applicable when two conditions are satisfied: "[t]he complaining party must be guilty of a want of due diligence in failing to assert his rights and the failure must have worked to the prejudice of the party seeking its application." *Gray v. Gray*, 448 Pa.Super. 456, 671 A.2d 1166, 1170 (1996). Here, the trial court found that,

> [t]he Vendor, and his successors, took no action on the nonpayment of taxes and insurance between 1968, and 2001. In the meantime, Vendees have paid their purchase price in full, and have lost the use of their money for that time period. Thus, the two conditions for the application of laches has [sic] occurred . . . .

(Findings of Fact and Conclusions of Law at 5). Moreover, since the only disinterested witnesses are now deceased, Appellees are unable to prove that their father waived the taxes and insurance provisions in the Agreements. Therefore, we agree that the doctrine of laches bars the estate from rescinding the Agreements at this late date.

■ ¶ 16 Finally, we note that Appellant also contends, in a brief one paragraph argument, that the doctrine of laches should bar Appellees from seeking enforcement of the Agreements since they failed to "raise the existence of the Articles until almost one year into administration of the Estate." (Appellant's Brief at 19). However, Anna Marie testified that Appellant was aware she and Merritt bought the farm, and that she was busy taking care of other aspects of the estate. (N.T., 4/16/01, at 45–47). Moreover, Merritt's wife was very ill at the time their father died, and, in fact passed away only eight months later. (*Id.* at 64). Clearly, the court found this testimony provided a credible explanation for Appellees' failure to produce the Articles of Agreement before September of 2000. We find no reason to disagree. *See Hostetter v. Hoover,* 378 Pa.Super. 1, 547 A.2d 1247, 1249 (1988), *appeal denied,* 523 Pa. 642, 565 A.2d 1167 (1989) (in equity matters, "we are bound by the trial court's determinations pertaining to the credibility of witnesses and the weight to be accorded to the evidence").

¶ 17 Decree affirmed.