J-A09005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RL MECHANICAL, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RC COMPANY, INC. | : | No. 2934 EDA 2018 |

Appeal from the Judgment Entered, September 6, 2018,
in the Court of Common Pleas of Chester County,
Civil Division at No(s): 2015-11798-CT.

BEFORE: KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED JULY 08, 2019**

RL Mechanical, Inc., Subcontractor, appeals from the judgment entered against it on its claims for breach of contract and violation of Pennsylvania's Contractor and Subcontractor Payment Act and in favor of the RC Company, Inc., General Contractor, for breach of contract and related claims. Upon review, we affirm.

The trial court set forth detailed findings of fact in its decision. Briefly, we note that this case arises out of contractual dealings between the parties on two projects, the Vivarium Project and the Dental Office Project. RC served as the General Contractor; RL served as the Subcontractor to design and install HVAC systems. For each project, General Contractor and Subcontractor entered into a purchase order with general conditions and a subcontractor agreement. Disputes between the parties arose over each party's compliance

_____
* Retired Senior Judge assigned to the Superior Court.

with the contract documents. The Subcontractor filed suit; General Contractor then filed counterclaims. The claims are summarized below.

First, regarding the Vivarium Project, Subcontractor submitted Invoice 3 in the amount of $87,857.10 to General Contractor for payment. This invoice included a balance due for special order equipment in the amount of $65,264.58, which Subcontractor claimed was to be paid up front. However, General Contractor only paid $45,939.58 of the total amount requested.

According to Subcontractor, the payment process employed by General Contractor for Invoice 3 was not consistent with the process used for prior requests. For Invoices 1 and 2, the parties did not follow the payment process terms provided for in their contract. Instead, a representative of General Contractor reviewed the invoice, informed Subcontractor of the amount it disputed, if any, and noted an adjusted amount on the paperwork. General Contractor then issued payment consistent therewith.

However, with respect to Invoice 3, General Contractor did not inform Subcontractor that it disputed any portion of the payment request, and instead just unilaterally adjusted the amount to be paid. Moreover, the amount paid was not consistent with the amount General Contractor's administrative assistant, Deborah McGreal, had noted on the paperwork. Additionally, General Contractor requested documentation supporting the request which it had not required before. Because General Contractor did not pay in accordance with the usual payment process, Subcontractor claims General Contractor breached the parties' agreement. Consequently, Subcontractor

suspended performance, and filed suit seeking the balance of the contract due from General Contractor.

General Contractor countered, claiming that Subcontractor did not request payment under Invoice 3 in conformance with the agreement's payment provisions. According to General Contractor, Subcontractor did not submit the required documentation. Additionally, the contract documents did not provide for prepayment of equipment as Subcontractor had demanded. Consequently, General Contractor only paid the amount it was required to pay pursuant to the terms of the contract documents. Then, because Subcontractor walked off the job, General Contractor claimed it had to hire another contractor, Sebastian and Sons, to complete the project. General Contractor sought damages incurred for having to use another contractor to complete the project at a higher price.

Second, regarding the Dental Office Project, Subcontractor claimed that General Contractor failed to pay the total amount due under the contract, $14,862, for several months. As a result, Subcontractor filed a mechanics' lien claim. Sometime thereafter, General Contractor paid in full, subject to any claims.

General Contractor countered, claiming that the Subcontractor failed to provide General Contractor with documentation needed to close out the project with the tenant and building owner. Consequently, General Contractor withheld payment. Additionally, Subcontractor failed to install a certain exhaust fan required per the contract documents. General Contractor sought

damages in the amount of $1,600, for the fan that was not installed and the credit General Contractor gave the project owner for not installing it.

Both parties requested attorney's fees for having to take legal action to recover amounts they claimed were owed under the contract documents.

Following a bench trial, the court found in favor of Contractor and awarded it $8,350 total on its counterclaims for both projects, plus attorney's fees to be determined. Subcontractor filed post-trial motions, which the trial court denied. The parties then stipulated to General Contractor's attorney's fees in the amount of $30,249.29. Judgment was entered in the amount $38,599.29.

Subcontractor timely appealed. Subcontractor and the trial court complied with Pa.R.A.P. 1925.

On appeal, Subcontractor raises the following issues:

1. Did the trial court err in making findings of fact unsupported by substantial evidence, abuse its discretion, and commit errors of law by failing to conclude that the written agreements of the parties were modified by the conduct and course of performance of the parties such that:

    (a) [General Contractor's] failure to make payment as required constituted a material breach of the contract between the parties;

    (b) [Subcontractor] was entitled to suspend performance when not paid?

2. Did the trial court made [sic] findings of fact unsupported by substantial evidence, abuse its discretion, and commit errors of law by awarding attorney's fees to [General Contractor]?

3. Did the trial court make findings of fact unsupported by substantial evidence, abuse its discretion, and commit errors

of law by awarding damages to [General Contractor] for the cost of "completing" the Vivarium Project?

Subcontractor's Brief at 4. Subcontractor asks this Court to enter judgment in its favor and remand for determination of an award of attorneys' fees.

> Our review in a non-jury case is
>
> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Hart v. Arnold*, 884 A.2d 316, 330–331 (Pa. Super. 2005), *appeal denied*, 897 A.2d 458 (2006) (citations omitted). "The [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Id.* (citations omitted). "Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court." *Tagliati v. Nationwide Ins. Co.,* 720 A.2d 1051, 1053 (Pa. Super. 1998), *appeal denied,* 740 A.2d 234 (1999). "With regard to such matters, our scope of review is plenary as it is with any review of questions of law." *Id.*

We also must consider whether the trial court properly denied Subcontractor's post-trial motion seeking JNOV. The propriety of a JNOV is a question of law, and therefore, our scope of review is plenary. *Foster v. Maritrans, Inc*., 790 A.2d 328, 330 (Pa. Super. 2002).

There are two bases upon which a JNOV can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010), *aff'd*, 55 A.3d 1088 (Pa. 2012). With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. *Id.* With the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *Id.*

Moreover,

[i]n reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner.

*Reott*, 7 A.3d at 835. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. *Eichman v. McKeon*, 824 A.2d 305, 312 (Pa. Super. 2003). Thus, when there is a question of fact to be resolved, it is within the purview of the factfinder. *Rohm & Hass Co. v. Continental Cas. Co.*, 732 A.2d 1236, 1248

(Pa. Super. 1999). JNOV should not be entered where evidence is conflicting upon a material fact. *Id.*

"Our standard[s] of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical." *Reott*, 7 A.3d at 835. "We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Id.*

In its first issue, Subcontractor argues that the trial court erred in finding that the parties did not modify the written payment process provisions based upon their course of conduct. According to Subcontractor, the evidence established that the parties modified the payment terms of the applicable construction contracts by their conduct. Subcontractor's Brief at 16-17. Subcontractor further argues that the trial court erred in finding that Subcontractor was not entitled to suspend performance based upon General Contractor's breach of contract for failure to pay in accordance with the modified payment process. *Id.* at 18. Thus, according to Subcontractor, because the trial court's conclusions were not supported by the evidence, the trial court erred as a matter of law. *Id.* We disagree.

A written agreement may be modified by a subsequent oral agreement which may be shown by words or conduct of the parties. *Levicoff v. Richard I. Rubin & Co.*, 196 A.2d 359 (Pa. 1964). An oral modification of a written contract must be based upon valid consideration. *In re Estate of Bowman*,

797 A.2d 973, 977 (Pa. Super. 2002). Any such modification must be proven by evidence which is clear, precise and convincing. *Id*. at 977.

On the Vivarium Project, the trial court found that the circumstances surrounding Subcontractor's payment requests did not satisfy the requirements for establishing a modification of the parties' written agreement. The trial court explained in detail:

> Without doubt, the first and second invoices contain the handwriting of General Contractor's administrative assistant Deborah McGreal setting forth an adjusted figure and this sum was paid to Subcontractor. McGreal testified that part of her job duties included reviewing and marking up invoices for her supervisor; McGreal tried to catch and correct errors before passing invoices along. In other instances, McGreal's supervisor would instruct her to make corrections to the invoices. McGreal had no authority to approve payments to Subcontractors. McGreal's supervisor determined what payment would be made and gave McGreal permission to write a check in that amount. McGreal would then meet with Brian Walsh, Subcontractor's principal ("Walsh") at General Contractor's office, finalize the paperwork, including notarizing Walsh's signature on the invoice, and turnover [sic] the check.
>
> When the third invoice was submitted, disputes were building between the parties. General Contractor was dissatisfied with Walsh's failure to regularly appear at the job site. General Contractor blamed delays on Subcontractor's staffing. Walsh believed that the job was improperly staged because ceilings and walls were closed before he could do his work. At the time the third invoice was submitted, General Contractor requested documentation from Subcontractor to verify that Subcontractor had paid its suppliers. The contract called for this proof at 50% completion. Therefore, such documentation was not required when the first and second invoices were paid.
>
> When the third invoice was under review, McGreal asked Walsh for proof that he had paid his suppliers. Specifically, she required submission of one of two forms specified in the contract. One form, identified as Exhibit C-2 A in the contract, is a partial release

of liens from the Subcontractor's vendors, and the other, identified as Exhibit C-2 B in the contract, is a final waiver of liens from the Subcontractor's vendors. Subcontractor supplied neither form. McGreal adjusted the third invoice. The payment authorized by James Cottone, General Contractor's principal and project manager, and paid to Walsh was approximately half of the adjusted amount. Since McGreal was not told the reason for the reduced payment, she was unable to advise Walsh.

A course of conduct between the parties can be sufficient to demonstrate the intention of the parties to orally modify an agreement. Subcontractor does not allege that words were spoken that resulted in a modification, only that conduct resulted in a change. Specifically, that he was entitled to be paid the adjusted amount. A written agreement can be modified by a subsequent oral agreement provided the latter is based upon a valid consideration and is proved by evidence which is clear, precise and convincing. Subcontractor has not suggested what consideration was provided for the modification he contends was made. Furthermore, the evidence of modification, as discussed, is neither clear, precise nor convincing. McGreal's markings on the invoice were for in-house processing. There is no evidence that they represented a promise to pay. There is no evidence the payment process specified in the contract was modified such that Subcontractor could rely on these markings. The contract provision calling for documentation to be submitted by Subcontractor at 50% completion was not relevant until the third invoice was submitted. Evidence of payment made without lien waivers on the first and second invoices does not support a conclusion that this provision was intended to be waived on the third invoice, when it first became relevant.

Subcontractor continued to work after accepting the reduced payment on the third invoice undermining his position that he walked from the job due to non-payment. Six days later, when Cottone visited the job site and confronted Walsh on his failure to deliver equipment that Walsh had represented was onsite and on his failure to properly staff the job, Walsh walked off the job. It is evident that Subcontractor did not abandon the job due to pay issues, but because of this confrontation.

Trial Court Opinion, 1/24/18, at 2-3 (citations and quotations omitted).

Viewing the evidence in the light most favorable to General Contractor as we are required to do, our review of the record reveals that there was sufficient evidence to support the trial court's findings and its conclusion that the parties did not orally modify the payment terms of the contract. To the extent that the evidence was conflicting, it was within the trial court's province to resolve such conflict. JNOV should not be entered based upon the existence of conflicting evidence. *See Rohm & Hass Co.*, 732 A.2d at 1248.

Moreover, although a party may be entitled to suspend performance where the other party materially breaches the contract, *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003), here the evidence demonstrated, as the trial court found, that General Contractor did not breach the contract. Rather, Subcontractor breached the contract by leaving the job and failing to complete the project, and was not entitled to suspend performance.

We therefore conclude that the trial court did not abuse its discretion or commit an error of law in denying Subcontractor's request for JNOV on this basis.

In its second issue, Subcontractor argues that the trial court erred in awarding General Contractor attorney's fees which it incurred in responding to this action (for both projects) as well as the mechanics' lien action on the Dental Office Project. According to Subcontractor, the purchase orders' general conditions and the agreements for the projects had conflicting provisions regarding attorney's fees. Because General Contractor drafted the

contract, Subcontractor argues that any ambiguity should be resolved in favor of Subcontractor. Thus, Subcontractor claims the trial court erred in awarding General Contractor attorney's fees. Subcontractor's Brief at 23, 25. We disagree.

The Pennsylvania Supreme Court has noted:

[T]he general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." This so-called "American Rule" holds true "**unless there is** express statutory authorization, **a clear agreement of the parties**, or some other established exception.

**McMullen v. Kutz**, 985 A.2d 769, 775 (Pa. 2009) (citations omitted) (emphasis added).

Section 15.4 of the agreement for both projects provided:

Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the party prevailing, after verdict or award, shall be entitled to recover reasonable attorney's fees, costs, charges and expenses expended or incurred therein as part of its verdict or award.

We note that the purchase orders' general conditions were silent on the issue of attorney's fees. As the trial court concluded, there was no ambiguity or conflict as claimed by Subcontractor. **See** Trial Court Opinion, 1/24/ 18, at 3. Thus, because the agreements clearly set forth the parties' intent regarding attorney's fees, we discern no abuse of discretion or error of law in the trial court's award of attorney's fees to General Contractor.

- 11 -

In its third issue, Subcontractor argues that the trial court erred in awarding General Contractor damages for the cost of hiring another subcontractor to complete the Vivarium Project. The trial court awarded General Contractor $8,350.00, the difference between what General Contractor paid to Sebastian and Sons and the unpaid balance under the Vivarium purchase order. According to Subcontractor, Sebastian and Sons did not complete the contract, but rather designed and installed an entirely different HVAC system. Moreover, the system did not function properly. Subcontractor's Brief at 26. We disagree.

Indisputably, "[w]here the subject to a contract relates to building or construction, the measure of damages [for breach by the contractor] is the reasonable cost to the owner of completing the contract . . . ." *Magar v. Lifetime, Inc.*, 144 A.2d 747, 748 (Pa. Super. 1958) (quotations and citations omitted).

In awarding damages to General Contractor on the Vivarium Project, the trial court explained:

> After Subcontractor walked off the job, Sebastian was engaged to inspect the status of Subcontractor's work, determine what was needed to complete the work and to then complete the work. At that time, the walls and ceiling were closed necessitating design changes. The project completed by Sebastian, the installation of HVAC for a newly constructed vivarium, was the same project for which Subcontractor had been contracted. The changes were necessitated by the state of the project when Sebastian came onboard after Subcontractor failed to perform. There were no upgrades. There was no expansion of the project. Alliance Pharmaceutical ("Owner") accepted and paid for the completed project. Owner acquired certification of the facility from the

Association for Assessment and Accreditation of Laboratory Animal Care, which was the desired outcome. Since delivering the project, General Contractor has continued to work with Owner to address humidification issues in the vivarium. Despite these issues, there was no testimony that the Owner was dissatisfied with the project. As recited by Subcontractor, the measure of damages for a construction contractor's breach is the cost of completing the contract or correcting the defective work, minus the unpaid part of the contract price. Had the ceiling and walls been removed to complete Subcontractor's work, the damages assessed would have been greater. Avoiding waste, General Contractor proceeded with a different design, which accomplished the same goal and was accepted by the Owner.

Trial Court Opinion, 1/24/18, at 3-4.

Again, viewing the evidence in the light most favorable to General Contractor as we are required to do, our review of the record reveals that there was sufficient evidence to support the trial court's findings and its conclusion that General Contractor was entitled to damages for the additional costs it incurred to complete the Vivarium Project. As discussed above, Subcontractor was not justified in leaving the job. Where a request for JNOV is based upon conflicting evidence as it is here, JNOV should be denied. *See* ***Rohm & Hass Co.***, 732 A.2d at 1248. We therefore conclude that the trial court did not abuse its discretion or commit an error of law in denying Subcontractor's request for JNOV on this basis.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/19