J-S57004-19

2020 PA Super 50

| | | |
|---|---|---|
| JUDITH A. VACULA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT F. CHAPMAN | : | No. 775 MDA 2019 |

Appeal from the Order Dated April 18, 2019
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-1515-2018

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                    **FILED: MARCH 5, 2020**

Judith A. Vacula appeals from the order that sustained the preliminary objections of Robert F. Chapman and dismissed her complaint with prejudice. We reverse the order and remand for further proceedings.

We glean the following underlying facts from Ms. Vacula's second amended complaint.[1]  Ms. Vacula and Mr. Chapman began a romantic relationship in 2012.  In January 2017, they reached an oral agreement to purchase a home in which to reside together.  The parties agreed that they would jointly own the real estate, but that only Mr. Chapman would be named as the grantee on the deed.  In reliance upon the agreement, Ms. Vacula gave Mr. Chapman $4,630 towards costs for a home inspection, a deposit, a down

---

[1] In this context, a court "must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts." ***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 436 (Pa. 2004).

payment, and closing costs on the property. In April 2017, both Ms. Vacula and Mr. Chapman attended the closing on the transaction, and they began residing in the home with Ms. Vacula's minor children. In August 2017, the family grew with the addition of two kittens.

The parties also had an oral agreement as to the family's living expenses. Specifically, Ms. Vacula was to be responsible for paying the electric and internet utilities as well as purchasing all groceries. Mr. Chapman was to pay the mortgage and the cable bill. The remaining utility expenses were to be shared equally.

The arrangement proceeded as planned for approximately six months. During this time, in addition to expending funds pursuant to the parties' oral agreement, Ms. Vacula also contributed towards maintenance and repairs to the property, as well as improvements such as painting.

The parties' relationship began to deteriorate in September 2017. Arguments between them resulted in Mr. Chapman's leaving for days or weeks at a time. After several months of this, Mr. Chapman filed a landlord-tenant complaint against Ms. Vacula in the magisterial district court, which ultimately resulted in an award of possession to Mr. Chapman. During Mr. Chapman's absences and the litigation of the landlord-tenant action, Ms. Vacula alone bore all of the household expenses and maintenance costs, including utilities and mortgage payments that Mr. Chapman had agreed to pay.

Mr. Chapman executed his order for possession on February 7, 2018. As a result, Ms. Vacula had to find new housing for herself, her children, and the kittens, "at extraordinary personal expense." Second Amended Complaint, 2/19/19, at ¶ 22. Mr. Chapman also refused to allow Ms. Vacula to recover her personal property from the residence.

Ms. Vacula filed a *pro se* complaint of her own against Mr. Chapman in the magisterial district court for monetary damages, and received an award exceeding $12,000. Ms. Vacula appealed to the trial court. Following Mr. Chapman's praecipe for a rule to file a complaint, several complaints and rounds of preliminary objections were filed, culminating in the counselled second amended complaint at issue in this appeal. Therein, Ms. Vacula sought $24,000 in damages, plus interest, under theories of breach of contract and unjust enrichment.

Mr. Chapman filed preliminary objections in the nature of a demurrer as to both counts based upon the statute of frauds. Mr. Chapman also averred that Ms. Vacula's claims were barred by *res judicata* and collateral estoppel, and were stated with insufficient specificity. Ms. Vacula filed a memorandum of law in opposition.[2] By order of April 18, 2019, the trial court sustained the

---

[2] Although Ms. Vacula's memorandum is docketed and discussed by the trial court in its opinion, it is not included in the certified record. However, we gather from the documents properly before us that Ms. Vacula's only stated basis of opposition was Mr. Chapman's failure to include a notice to defend and/or endorsement to plead with the preliminary objections.

preliminary objections based upon the statute of frauds and dismissed Ms. Vacula's second amended complaint with prejudice. Ms. Vacula filed a timely notice of appeal. The trial court did not order Ms. Vacula to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and none was filed. However, the trial court authored an opinion pursuant to Pa.R.A.P. 1925(a).

Ms. Vacula presents the following issues for this Court's consideration:

A.    Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in sustaining Mr. Chapman's preliminary objections to Ms. Vacula's second amended complaint.

1.    Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in disregarding Mr. Chapman's failure to include a notice to defend or to endorse his preliminary objections with a notice to plead.

2.    Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in dismissing both Ms. Vacula's breach of contract and unjust enrichment claims in her second amended complaint on the basis of the statute of frauds.

3.    Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in disregarding the authority of *Hostetter v. Hoover*, 547 A.2D 1247 (Pa.Super. 1988).

B.    Whether the trial court committed an error of law, abused its discretion or otherwise ruled improperly in dismissing Ms. Vacula's second amended complaint w[i]th prejudice, instead of permitting her to file a further amended pleading within twenty (20) days.

Ms. Vacula's brief at 10-11 (unnecessary capitalization omitted).

Ms. Vacula first argues that the trial court should not have sustained Mr. Chapman's preliminary objections because Mr. Chapman did not include therein a notice to defend or notice to plead. Ms. Vacula's brief at 24-26. This argument is unavailing.

Under our Rules of Civil Procedure, the requirement of a notice to defend attaches only to complaints. *See* Pa.R.C.P. 1018.1(a). Mr. Chapman filed no complaint in this action. Rather, Mr. Chapman stated preliminary objections pursuant to Pa.R.C.P. 1028. That rule contains a note expressly addressing the requirement, or lack thereof, for endorsement with a notice to plead depending on the type of objection raised:

> *Note*: Preliminary objections raising an issue under subdivision (a)(1), (5), (6), (7) or (8) cannot be determined from facts of record. In such a case, the preliminary objections must be endorsed with a notice to plead or no response will be required under Rule 1029(d).
>
> However, preliminary objections raising an issue under subdivision (a)(2), (3) or (4) may be determined from facts of record so that further evidence is not required.

Pa.R.C.P. 1028.

Mr. Chapman's preliminary objections were pursuant to subdivisions (a)(2) (failure of pleading to conform to law), (a)(3) (insufficient specificity), and (a)(4) (demurrer). Accordingly, no endorsement with a notice to plead was necessary, no responsive pleading from Ms. Vacula was required, and the averments in Mr. Chapman's pleading were deemed to be denied pursuant to Pa.R.C.P. 1029(d).

The trial court properly noted the above, but determined that Mr. Chapman had demonstrated that Ms. Vacula's complaint was legally insufficient based upon the statute of frauds. *See* Trial Court Opinion, 5/14/19, at 4. Therefore, we turn to Ms. Vacula's arguments that the Statute of Frauds does not render her complaint legally insufficient.[3]

We begin with the pertinent legal principles.

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the plaintiff's complaint. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Thus, our scope of review is plenary and our standard of review mirrors that of the trial court. Accepting all material averments as true, we must determine whether the complaint adequately states a claim for relief under any theory of law.

_____

[3] Mr. Chapman contends that Ms. Vacula waived her substantive arguments by not raising them in the lower court. *See* Mr. Chapman's brief at 3-7 (citing, *inter alia*, Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")). In this instance, Mr. Chapman is incorrect. As we have explained:

> Although under Pennsylvania Rule of Appellate Procedure 302(a) issues not raised below are waived, our Supreme Court has held that there is no requirement in the Rules of Civil Procedure that the non-moving party respond to a preliminary objection, nor must that party defend claims asserted in the complaint. Failure to respond does not sustain the moving party's objections by default, nor does it waive or abandon the claim. Instead, **as long as a plaintiff asserts in a complaint a cause of action, the plaintiff may assert any legal basis on appeal why sustaining preliminary objections in the nature of a demurrer was improper**.

***Dixon v. Northwestern Mutual***, 146 A.3d 780, 783-84 (Pa.Super. 2016) (cleaned up, emphasis added).

*Keller v. Bank of New York Mellon*, 212 A.3d 52, 56 (Pa.Super. 2019) (cleaned up).

The Statute of Frauds "prevent[s] the enforcement of unfounded fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence." *Strausser v. PRAMCO, III*, 944 A.2d 761, 765 (Pa.Super. 2008) (internal quotation marks omitted). In other words, a contract for the sale or transfer of real estate generally will not be enforced to recognize or award an interest in the property in a buyer/grantee unless that contract is supported by a writing signed by the seller/grantor. *See*, *e.g.*, *Hostetter v. Hoover*, 547 A.2d 1247, 1250 (Pa.Super. 1988).

However, "[t]he Statute of Frauds does not void those oral contracts relating to land which fail to comply with the Statute's formal requirements." *Fannin v. Cratty*, 480 A.2d 1056, 1059 (Pa.Super. 1984). "Pennsylvania courts have emphasized that the Statute is not designed to prevent the performance or enforcement of oral contracts that in fact **were** made." *Zuk v. Zuk*, 55 A.3d 102, 107 (Pa.Super. 2012) (emphasis in original, internal quotation marks omitted).

Recovery of monetary damages for nonperformance of an agreement to create or transfer an interest in land is available, "the measure of such damages being the money that was paid on account of the purchase and the expenses incurred on the faith of the contract." *Polka v. May*, 118 A.2d 154, 156 (Pa. 1955). Additionally, even specific performance may be ordered upon

the appropriate showing of part performance of the oral contract. **See Hostetter**, **supra** at 1251 ("[S]pecific performance of an oral contract for the sale of real estate may be ordered where it appears that continuous and exclusive possession of the subject property was taken under the oral contract and improvements were made by the buyer which are not readily compensable in money.").

The trial court in the case *sub judice* held that Ms. Vacula's complaint stated no viable claim because "the statute of frauds has clearly made any oral agreement in support of breach of contract and unjust enrichment unenforceable." Trial Court Opinion, 5/14/19, at 3 (unnecessary capitalization omitted). The trial court's ruling is legally incorrect.

First, Ms. Vacula's claim for breach of contract sought not specific performance of the alleged oral agreement between the parties to become joint owners of the real estate in question, but rather monetary damages to compensate her for "money that was paid on account of the purchase and the expenses incurred on the faith of the contract." **Polka**, **supra** at 156. Specifically, Ms. Vacula sought to recover money she gave to Mr. Chapman towards the home inspection, deposit, down payment, and closing costs on the property. **See** Second Amended Complaint, 2/19/19, at ¶¶ 9-11, 28. She further seeks to recover mortgage and utility payments she made on Mr. Chapman's behalf that he had agreed to pay, and the expenses she incurred as a result of his evicting her from the house. **See id**. at ¶¶ 27-29. The

Statute of Frauds is not an impediment to her recovery of such damages. *See*

*Polka*, *supra* at 156.

Second, the Statute of Frauds has no relevance to Ms. Vacula's unjust

enrichment claim. As discussed, the Statute pertains to the enforceability of

contracts. An unjust enrichment claim is not based upon the existence of

contract, but instead is an alternative to a contract claim. As this Court has

explained:

> A claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but **in spite of the absence of an agreement**, when one party receives unjust enrichment at the expense of another.
>
> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828,

833 (Pa.Super. 2008) (cleaned up, emphasis added).

Hence, the Statute of Frauds does not render Ms. Vacula's unjust

enrichment claim legally deficient. The second amended complaint alleges

that Mr. Chapman realized benefits in the form of Ms. Vacula's financial

contributions to the purchase, maintenance, and improvement of the

property, as well as her personalty which remained in the house, and that it

would be unjust to allow him to retain those benefits without paying her for their value. *See* Second Amended Complaint, 2/19/19, at ¶¶ 31-34. These allegations are sufficient to state a *prima facie* case of unjust enrichment.[4]

For the above reasons, we conclude that Ms. Vacula's complaint adequately states claims for relief under theories of breach of contract and unjust enrichment. Consequently, we hold that the trial court erred in sustaining Mr. Chapmans' preliminary objections in the nature of a demurrer and dismissing Ms. Vacula's second amended complaint on that basis.

The trial court did not address Mr. Chapman's additional preliminary objections regarding *res judicata*, collateral estoppel, or insufficient specificity. Mr. Chapman does not argue on appeal that any of those objections serves

---

[4] The trial court also opined that Ms. Vacula's claims relating to the value of household services she provided were not recoverable under ***Mitchell v. Moore***, 729 A.2d 1200, 1202 (Pa.Super. 1999). ***See*** Trial Court Opinion, 5/14/19, at 3. In that case, this Court reversed a verdict in favor of the plaintiff on the basis that the record did not show that services performed by her during the course of her relationship with the defendant were "of the type for which one would normally expect to be paid, nor did they confer upon the defendant a benefit that is unconscionable for him to retain without making restitution to the plaintiff." ***Mitchell***, ***supra*** at 1206. However, this Court made it clear that it was not holding that "the services rendered in all unmarried couple's relationships [are] gratuitous." ***Id***. Rather, there is a merely a rebuttable presumption that labors performed for each other in such circumstances are not subject to restitution through quasi-contract. ***See id***. As such, ***Mitchell*** does not mandate that Ms. Vacula is incapable of recovering under any legal theory such that sustaining a preliminary objection in the nature of a demurrer was appropriate. Rather, it may establish the appropriate evidentiary burden for a small fraction of the damages alleged by Ms. Vacula.

as an alternative basis to affirm the dismissal of Ms. Vacula's action. Nonetheless, we note that the applicability of *res judicata* and/or collateral estoppel is not apparent from the four corners of the second amended complaint, and thus cannot serve as basis to validate the dismissal. **See**, **e.g.**, **Weinar v. Lex**, 176 A.3d 907, 926 (Pa.Super. 2017) ("[*R*]es *judicata* and collateral estoppel are affirmative defenses that must be raised in New Matter, not in preliminary objections . . . unless the complaint sets forth in detail, either directly or by reference, the facts and issues pleaded by the prior suit.") (cleaned up)).[5]  Further, it is clear from our discussion above, and Mr. Chapman's filings in the court below, that her allegations were sufficiently specific and comprehended by him.

As we discern no valid legal basis for the trial court's dismissal of the second amended complaint, we reverse the trial court's April 18, 2019 order, and remand for litigation of Ms. Vacula's claims.

Order reversed.  Case remanded for further proceedings.  Jurisdiction relinquished.

---

[5] Ms. Vacula waived the procedural irregularity of Mr. Chapman's pleading affirmative defenses as preliminary objections, rather than as new matter, by not filing preliminary objections to Mr. Chapman's preliminary objections. **See Duquesne Slag Products Co. v. Lench**, 415 A.2d 53, 54 (Pa. 1980) (holding plaintiff's claim that defendant improperly raised *res judicata* by preliminary objection was waived by plaintiff's failure to file an objection to the objection).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/05/2020