J-A19030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

MICHAEL TRAVIS AND SIRI TRAVIS    :    IN THE SUPERIOR COURT OF
                                             :          PENNSYLVANIA
           Appellants    :
                                                 :
                                                 :
           v.                                  :
                                                 :
CARRIE A. WHITFIELD                  :       No. 2109 EDA 2020

Appeal from the Judgment Entered December 29, 2020
In the Court of Common Pleas of Wayne County
Civil Division at No. 2019-00171

BEFORE:    DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:          **FILED SEPTEMBER 7, 2021**

Siri Travis (Siri) and her husband, Michael Travis (collectively Appellants), appeal from the judgment entered in this real property contract dispute. After careful consideration, we affirm.

Following a bench trial, the court made the following findings:

> [Siri] and [Carrie A. Whitfield (Whitfield)] are sisters. At all times, [Whitfield] was and is the record owner of a piece of property (hereinafter "the property"), 771 Palmyra Highway, White Mills, PA, 18743….
>
>                                      * * *
>
> On, about, and during the early months of 2006, [Appellants] owned a home at 660 E. Scott Street, Olyphant, PA, 18447, and maintained residence there. A Settlement Statement regarding the sale of the Olyphant property was entered into on July 31, 2006. . . . The total amount of the Settlement Statement for the Olyphant property is for the amount of $17,057.19. . . .

---

[*] Retired Senior Judge assigned to the Superior Court.

On, about, or during the early months of 2006, [Whitfield] was experiencing financial difficulties and was unable to remain current on the mortgages, taxes, and other expenses related to the property — which was a "family home." [Siri's] "Aunt" resided on the property at that time.

[Whitfield] proposed that [Appellants] purchase the property to "save the home (from foreclosure) and to keep it in the family." [Appellants] relied on the content of the conversation with [Whitfield] and as a result, **placed the Olyphant property up for sale in order to purchase the property**. The monies needed to save the property were to be gathered between [Siri's] parents, [Whitfield], and [Whitfield's] husband. Upon the sale of the Olyphant property, [Appellants] were to pay back [Whitfield], [Whitfield's] husband, and [Siri's] parents the amount which these parties had collectively paid for the property.

[Siri] and [Whitfield] discussed that [**Whitfield**] **would keep her name on the mortgage on the property until said time** [**Appellants**] **could obtain a mortgage on the property**. [Appellants] were to make [Whitfield's] mortgage and property tax payments on the property while maintaining the property as their place of residence.

[Siri] believed the price for the purchase of the property would be "whatever was left on the mortgage." The ***oral agreement*** with [Whitfield purportedly] was memorialized in a "short document" which stated [Appellants] were to purchase the home "within a reasonable amount of time." [Siri] believes this document[, which was never produced,] was signed by [Appellants] and [Whitfield] and was notarized.

A document dated February 4, 2011, which is notarized and signed only by [Whitfield] states, "Carrie A. Whitfield has bare legal title to the property and is holding the title for [Appellants]. Moreover, [Appellants'] sister, Carrie A. Whitfield, will transfer the property to [Appellants] when their credit score makes it possible for them to obtain financing." . . . There was no discussion between [Appellants] and [Whitfield] regarding the meaning of the phrase "transferring the property."

[**Appellants**] **cannot produce a *written* agreement for sale regarding the property**.

- 2 -

[Appellants] understood the oral agreement stipulated [that Appellants] would move onto the property and would pay [Whitfield's] mortgage and property tax payments on the property. [Appellants] knew they were not purchasing the property the day they moved onto the property.

The proceeds from the sale of the property in Olyphant as well as "physical labor" by [Michael Travis] at [Whitfield's new residence,] . . . were used by [Appellants] to pay back [Whitfield], [Whitfield's] husband, and [Siri's] mother for the price they collectively paid to "save" the home.

[Appellants] believed the total payoff amount for the mortgage of the property would be approximately $20,000. [Appellants] moved into the property in the late summer of 2006.

[**Appellants made considerable repairs and improvements to the property over the years**.] . . . Two rooms of the house were "gutted" and needed extensive repair and . . . the total cost of the repairs for the two rooms is $3,713.83. [Appellants] completed the repairs on the property between 2006 — October 2018 and presented receipts . . . which lists the [] amount for repairs is $6,704.49. [Appellants spent a total amount of approximately **$10,418 on repairs/improvements**.]

[Appellants] have been responsible for maintaining mortgage payments on the property since 2006. . . . The total amount of mortgage payments made by [Appellants] is $24,494.85. . . .

At 5:40 PM on October 4, 2018, [Siri] text messaged [Whitfield] and said [Siri] "payed [*sic*] September and October's Mortgage today." In a text message dated Thursday, October 4, 2018 at 4:33 PM, which came in response to [Siri's] request for information from [Whitfield], [Whitfield] stated the "Payoff figure to October 15th (2018) is $20,295.02."

[Appellants] paid taxes on the property, including taxes in arrears, from 2006 until October 2018, when they **ceased making any payments but continued to reside on the property until present day**. The total amount of taxes paid by

[Appellants] is $8,877.76. . . . [Appellants] were either late or delinquent on both the mortgage and the property tax payments at least 20 times.

[A] text message from [Siri] to [Whitfield] on an unknown date at 8:02 PM [states], "Hey I just wanted to let you know that I have paid the back taxes. The only one due now is the one due by next week. Please call me so we can talk about what's going on."

* * *

On Wednesday, October 10, 2018 at 11:50 AM, [Whitfield] text messaged [Siri] and stated, "The[y] received your payment. There is $363.86 worth of late fees due which will have to be paid at some point. Even when the loan is paid off at that time they can be paid." . . .

On September 9, 2018 at 8:36 PM, [Siri] text messaged [Whitfield] that [Appellants] had been pre-approved for a VA loan and "want to move forward with it" (purchasing the property). [Siri] further text messaged [Whitfield] that [Appellants] had taken over the bills and that the loan and mortgage would be in both [Appellants'] names.

On September 9, 2018, at 8:55 PM, [Whitfield] responded [to Siri] and stated that [Appellants] "have had 12 years to get a mortgage."

* * *

[The parties thereafter exchanged numerous text messages; in sum, Appellants asked Whitfield to sell the property to Appellants but Whitfield refused.] [**Whitfield**] **has failed to convey the property to** [**Appellants**]. [Appellants] neither set up an escrow account nor asked this [c]ourt for injunctive relief for [Appellants] to stop the mortgage or property tax payments on the property.

* * *

[**Appellants**] **do not have the funds available as of the day of the** [**July 28, 2020**] **trial to fulfill the payment obligation for specific performance**.

- 4 -

Trial Court Opinion and Verdict, 9/30/20, at 2-6, 8-9 (emphasis added; paragraph numbering and breaks omitted).

In their complaint seeking specific performance of the oral contract for sale of the property, Appellants pled breach of contract, unjust enrichment and fraudulent misrepresentation. In the alternative, Appellants requested an award of monetary damages in excess of $50,000. Finally, Appellants sought an award of punitive damages for Whitfield's fraudulent misconduct.

Whitfield countered in her answer and new matter that any purported oral contract was unenforceable and Appellants were not entitled to any damages, as all monies they spent on the property constituted rent.

After trial, the court on September 30, 2020 issued an opinion and verdict finding that the parties entered into an oral contract for the sale of the property. *See id.* at 12-14 (concluding Appellants met the required elements for a valid contract and rejecting Whitfield's claim that all of Appellants' payments constituted rent). The court found Whitfield (a) breached the contract, upon which Appellants justifiably relied to their detriment; (b) fraudulently misrepresented the agreement; and (c) was unjustly enriched because Appellants made repairs/improvements to the property. *See*, *e.g.*, *id.* at 17 ("[Whitfield] unilaterally altered the terms of the contract for the sale of the property…. [Whitfield] never conveyed title to the property even after [Appellants] performed their end of the bargain as per documentary evidence."); *id.* at 14-19 (addressing Appellants' claims for breach of contract,

unjust enrichment, and fraud). However, the trial court ruled that the Statute of Frauds[1] rendered the oral contract unenforceable, and denied Appellants' request for specific performance. *See id.* at 9-11; *see also Wilson v. Parker*, 227 A.3d 343, 355 (Pa. Super. 2020) ("Parties to a contract that is unenforceable under the Statute of Frauds frequently act in reliance on it before discovering that it is unenforceable. A party may, for example, make improvements on land that is the subject of the contract." (citation and ellipses omitted)).

The trial court concluded that Appellants were entitled to monetary damages based on Whitfield's unjust enrichment from the improvements and repairs Appellants made to the property; the court ordered Whitfield to pay Appellants $10,418.24. *See* Trial Court Opinion, 9/30/20, at 16-17 (finding, *inter alia*, that the property "undoubtedly increased in value as a result of [Appellants] making these repairs with the expectation that the property would someday be titled under [Appellants'] names."). The court explained that the damages constituted "the cost incurred by [Appellants] in making repairs on the property." *Id.* at 20; *see also id.* at 15 (stating the damages represented expenses "for which [Appellants] can present **verified**

---

[1] The Statute of Frauds provides that agreements for the sale of real estate are generally enforceable only if they are in writing and signed by the seller. *Hostetter v. Hoover*, 547 A.2d 1247, 1250 (Pa. Super. 1988); *see also* 33 P.S. § 1. The purpose of the statute is to prevent perjury and fraudulent claims. *Hostetter*, 547 A.2d at 1250.

**documentation**" (emphasis added)).  Finally, the court declined to award punitive damages.

Appellants timely filed a motion for reconsideration on October 8, 2020, and Whitfield filed a competing motion for reconsideration the same day.  The trial court denied both motions.   Whitfield filed a praecipe for entry of judgment on October 28, 2020.   The prothonotary entered judgment on December 29, 2020.

Appellant timely appealed.[2]   Both Appellants and the trial court have complied with Pa.R.A.P. 1925.   Appellants present two issues for our consideration:

I.   Whether The Trial Court Abused its Discretion or Committed an Error of Law in Failing to Award Specific Performance to the [Appellants] by Requiring a Specified Closing Date and "Express Funds" on the Day of Trial Despite the Existence of Facts justifying Such Relief?

II.  Whether the Trial Court Abused its Discretion or Committed an Error of Law in Failing to Award [Appellants] Compensatory Monetary Damages for Anything Other Than Materials Purchased, including the Failure to Consider or Award Punitive Damages for [] Whitfield's Fraudulent Conduct?

Appellants' Brief at 6.

We are mindful of our standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law.  The findings of the trial judge in a non-jury case must be given the same weight and

_____

[2] Whitfield filed a cross-appeal which she has discontinued.

effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner. Additionally, the trial court, as factfinder, is free to believe all, part or none of the evidence presented[.] Therefore, assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder.

*Sovereign Bank v. Ganter*, 914 A.2d 415, 420 (Pa. Super. 2006) (citations, brackets, and quotation marks omitted). Further, "[w]hen reviewing equitable decrees, our scope of review and standard of review are deferential[.]"

*Wilson*, 227 A.3d at 352 (footnote omitted).

Regarding the Statute of Frauds, we have explained:

As a general rule, the effect of the statute is to render oral contracts for the sale of real estate unenforceable, although not invalid. Therefore, **they cannot be specifically enforced, even though they may possibly form the basis for an action to recover damages**.

*Hostetter*, 547 A.2d at 1250 (emphasis added).

As to specific performance and damages in this context:

Recovery of monetary damages for nonperformance of an [oral] agreement to create or transfer an interest in land is available, "the measure of such damages being the money that was paid on account of the purchase and the expenses incurred on the faith of the contract." *Polka v. May*, 118 A.2d 154, 156 (Pa. 1955). Additionally, even specific performance may be ordered upon the appropriate showing of **part performance of the oral contract**. *See Hostetter*, *supra* at 1251 ("[S]pecific performance of an oral contract for the sale of real estate may be ordered where it appears that continuous and exclusive possession of the subject property was taken under the oral contract and improvements

were made by the buyer **which are not readily compensable in money**." [(emphasis added)]).

*Vacula v. Chapman*, 230 A.3d 431, 436 (Pa. Super. 2020) (emphasis added); *see also Wilson*, 227 A.3d at 354 ("Usually, when a trial court declines to enforce an oral contract for the sale of land under the statu[t]e of frauds, the court returns the parties to the position they occupie[d] prior to the failed transaction. This means it will order the would-be seller to return to the would-be buyer any funds paid under the nullified contract."). Where this "part performance" exception is invoked, the plaintiff must show, *inter alia*, "performance or part performance by the vendee which could not be compensated in damages, [] such as would make rescission inequitable and unjust." *Zuk v. Zuk*, 55 A.3d 102, 108 (Pa. Super. 2012) (citing *Kurland v. Stolker*, 533 A.2d 1370, 1373 (Pa. 1987)). Additionally, the terms of the contract "must be shown by full, complete, and satisfactory proof." *Zuk*, 55 A.3d at 108.

The Statute of Frauds has no relevance to a claim of unjust enrichment, which arises from a quasi-contract. *Vacula*, 230 A.3d at 437. A "party who would otherwise have a claim in restitution under a contract is not barred from restitution for the reason that the contract is unenforceable by him because of the Statute of Frauds[.]" *Wilson*, 227 A.3d at 354 (citation omitted)).

Finally, in reviewing the denial of Appellants' request for punitive damages,

[t]he law of this Commonwealth calls for the appellate courts to determine whether the trial court has committed any abuse of discretion when reviewing a [] punitive damage verdict, or whether on complete and exhaustive review of the record it shocks the court's sense of justice in a given case.

***Empire Trucking Co. v. Reading Anthracite Coal Co.***, 71 A.3d 923, 938 (Pa. Super. 2013) (citation and brackets omitted).

Appellants argue the trial court abused its discretion by (1) refusing to specifically enforce the parties' oral contract for sale of the property; and (2) awarding Appellants an inadequate amount of damages given Appellants' significant expenditures on the property over the years. ***See*** Appellants' Brief at 14-24. As Appellants' two issues are related, we address them together.

Appellants contend specific performance was appropriate and equitable, stating:

> The trial court had determined that an agreement existed; that [Appellants] had spent 14 years complying with the agreement; that they had sold their prior home to help [Whitfield] and the family; that they had expended substantial sums and made substantial improvements to the property which enhanced its value; that [Appellants] had satisfied all the conditions required of them; that Whitfield was being unjustly enriched; and, - ultimately - that Whitfield had defrauded [Appellants] as to her true intentions. During the entire 14 years[, Appellants] transformed a rundown property in a comfortable home[.]

***Id.*** at 18.

Appellants also challenge the award of damages:

> [I]n calculating the damages in this case the trial court effectively rewarded Whitfield's fraudulent conduct by giving her $24,494.85 in [Appellants'] mortgage payments and $8,877.76 in tax payments at [Appellants'] expense. . . . Additionally, the trial court gave no consideration to the extensive labor provided by

[Appellants]. … The trial court found that the work [Appellants] "undoubtedly increased" the value of the property, but gave no consideration to compensating [Appellants] for the "undoubted" increase in value to the property arising from their labor.

*Id.* at 22 (citation and paragraph break omitted); *see also id.* at 19 ("Much of what [Appellants] invested in this property is not readily compensable in monetary damages."). Appellants aver:

> [**T**]**he proper measure of damages in this case when it came to the fraud claim included everything that** [**Appellants**] **paid throughout the 14 years**. That out-of-pocket total is $43,790.85. Additionally, consideration should be given to the fact that [Appellants were] induced to part with a home they already had to rescue Whitfield from foreclosure and that they have undoubtedly increased the value of the property.

*Id.* at 24 (emphasis added; some capitalization omitted). Finally, Appellants assert the court erred in failing to award punitive damages for Whitfield's outrageous and intentional misconduct. *Id.* at 24-25.

Whitfield, on the other hand, defends the trial court's ruling and award of damages, arguing:

> Appellants failed to show where [their] alleged performance or part performance could not be compensated in damages, [] such as would make recission inequitable and unjust. The Appellants can be compensated for their performance or part performance … by the award of a money judgment in their favor for the alleged breach of the oral agreement by [Whitfield]. . . . The trial court reviewed the evidence presented by the Appellants and awarded the Appellants an appropriate amount.

Whitfield's Brief at 5-6 (unnumbered).

Here, the trial court explained its denial of specific performance as follows:

[Appellants] concede there was no contract ever memorialized in writing for the sale of the property.

* * *

The burden of proof required to be met in order for this [c]ourt to grant the requested specific performance in this matter has not been met by [Appellants]. **The terms of the agreement are vague as to the final date on which [Whitfield] would sell [Appellants] the property.** Furthermore, [Appellants] can show[] performance or part performance **for which they can be compensated in damages** such that the awarding of the damages is equitable and just.

Trial Court Opinion, 9/30/20, at 10-11 (emphasis added) (citing **Hostetter**, **supra** (where the part performance exception is met, "equity will enforce the contract to prevent a greater injustice.")). In denying specific performance, the court further observed, "[**Appellants**] **do not possess the express funds with which they can cover the cost of the mortgage** – $19,057.56[.]" **Id.** at 15 (emphasis added); **see also id.** at 9 (factual findings regarding specific performance).

Upon review of the relevant law and facts of record, we discern no abuse of discretion by the trial court in denying Appellants' claim for specific performance. The Statute of Frauds barred enforcement of the oral contract and the trial court appropriately found Appellants were entitled to damages. **See**, **e.g.**, **Redditt v. Horn**, 64 A.2d 809, 810 (Pa. 1949) (denying specific performance of oral contract for the sale of real estate where equities did not support it, though plaintiff could seek damages for expenditures and value of services performed); **Chesney v. Stephens**, 644 A.2d 1240, 1243-44 (Pa.

Super. 1994) (where long-term resident of real property made improvements but had no ownership interest, resident was entitled to damages for improvement expenditures from unjustly enriched property owner); *Glasgow v. G. R. C. Coal Co.*, 442 A.2d 249, 251 (Pa. Super. 1981) (denying specific performance of oral land contract barred by Statute of Frauds, but "agree[ing] with the trial court when it held that any performance or part performance by the [party claiming an interest in the property] was compensable in damages."); *Vacula*, 230 A.3d at 437 (reversing trial court's dismissal of plaintiff's claim for breach of an oral contract and unjust enrichment, where plaintiff sought only monetary damages, not specific performance, for monies plaintiff spent toward purchase and improvements of real property owned by defendant, and Statute of Frauds did not preclude claim for unjust enrichment); *cf. Briggs v. Sackett*, 418 A.2d 586, 589 (Pa. Super. 1980) (trial court did not err in specifically enforcing oral contract for sale of real property under part performance exception where "during the 14 years in which the [party claiming an equitable interest in the property] inhabited the home . . . [the property owner] never visited, sought rent, checked on the condition of the home, or otherwise asserted any interest in the property."); *cf. Hostetter*, 547 A.2d at 1251 (affirming order of specific performance of oral contract for sale of real estate in favor of equitable owners, finding that a refusal to enforce the contract under the circumstances would be inequitable

and unjust, and "improvements were made by the buyer which are not readily compensable in money.").

As stated above, we must defer to the trial court's assessment of the evidence. *See Sovereign Bank*, *supra*; *see also Wilson*, 227 A.3d at 352. Here, the court appropriately considered equitable factors, including that (a) Whitfield breached the contract; (b) Whitfield fraudulently misrepresented a material fact of the agreement, upon which Appellants justifiably relied to their detriment; (c) **Appellants lacked the necessary funds to pay off the mortgage**; and (d) an award of compensatory damages for monies Appellants spent on improving the property was warranted because Whitfield was unjustly enriched.

We also discern no abuse of the trial court's discretion in determining damages. The court found the only expenditures "for which [Appellants] can present **verified documentation**" concerned improvements and repairs Appellants made to the property. Trial Court Opinion, 9/30/20, at 15 (emphasis added)); *see also id.* at 17 ("Since title to the property was not conveyed once [Appellants] met their burden and [Whitfield] maintained title to the property – . . . any out of pocket costs **which are substantiated by [Appellants**] in regard to making repairs on the property" are appropriate. (emphasis added)). The trial court also noted Appellants "**benefitted from making the payments on the property in order to reside on the property**[; thus, Whitfield] didn't []wrongfully secure or passive[ly] receive a

benefit [that] would be unconscionable for her to obtain," aside from the "verified" cost of the improvements Appellants made. *Id.* at 16 (emphasis added); *see also Redditt*, *supra*.

Finally, we discern no abuse of the trial court's broad discretion in concluding no award of punitive damages was appropriate under the circumstances. *See Empire Trucking Co.*, *supra*; *Weston v. Northampton Pers. Care, Inc.*, 62 A.3d 947, 961 (Pa. Super. 2013) ("The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused.").

For the above reasons, Appellants' issues do not warrant relief.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/7/2021

- 15 -